1

2

3

4

5

6

7

# UNITED STATES DISTRICT COURT

8

EASTERN DISTRICT OF CALIFORNIA

9

10   JEREMIAH D. VICKERS,                    Case No. 1:15-cv-00129 DLB (PC)

11              Plaintiff,                    ORDER DISMISSING COMPLAINT
                                             WITH LEAVE TO AMEND

12        v.
                                             THIRTY-DAY DEADLINE
13   THOMPSON, et al.,

14              Defendants.
     _____/

15

16        Plaintiff Jeremiah D. Vickers ("Plaintiff"), a state inmate in the custody of the California

17   Department of Corrections and Rehabilitation, is proceeding pro se and in forma pauperis in this

18   civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on January 26, 2015.

19   He names Tulare County Sheriff Sgt. Thompson and Deputies Smith, O'Neil and Sandoval as

20   Defendants.[1]

21   **A.       <u>SCREENING STANDARD</u>**

22        The Court is required to screen complaints brought by prisoners seeking relief against a

23   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

24   Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

25   "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

26   monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

27   "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

28   _____
     [1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on February 4, 2015.

dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983.  Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  Plaintiff must present factual allegations sufficient to state a plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.**     **ALLEGATIONS IN COMPLAINT**

Plaintiff is currently incarcerated at California State Prison- Los Angeles County.  At all times relevant, Plaintiff was an inmate at the Tulare County Jail, housed in a single status cell in administrative segregation.  Plaintiff is African-American.

On August 27, 2014, at night medication pill pass, Defendant Smith opened the food port on Plaintiff's cell door to allow the nurse to hand him medication.  Plaintiff stuck his arm out of the food port in a "non-threatening manner," dangling at the elbow downward, and "refused to put

1  it back in, hindering the deputy's ability to close it."  ECF No. 1, at 4.  Defendant Smith told

2  Plaintiff to take his arm out, and Plaintiff refused.  Defendant Smith audibly exhaled and then

3  grabbed Plaintiff's arm and hand with both of his hands and began "twisting, turning and pulling

4  them in different directions in an attempt to dislocate and/or break them/it."  ECF No. 1, at 4.

5  Plaintiff was able to non-aggressively turn with Defendant.  The event lasted for fourteen seconds.

6  After about seven seconds, Plaintiff asked by he was trying to break his arm.  Defendant Smith

7  released Plaintiff's arm and shoved it back into the door saying, "motherfucker!"  ECF No. 1, at 4.

8       Defendant Smith then radioed his sergeant and co-workers. When the other deputies

9  arrived, Defendant Smith, with a smirk, said, "He won't stick his arm in.  I tried to break that

10  motherfucker."  ECF No. 1, at 6.  Defendant Thompson arrived briefly after the deputies and

11  Defendant Smith made no mention of grabbing Plaintiff's arm and trying to break it.  Defendant

12  Thompson instructed Plaintiff to take his arm out of the food port, or else he'd be tased.  At the

13  suggestion of another officer, Plaintiff was simply handcuffed and placed in a downstairs holding

14  cell.  Plaintiff contends that he was never a physical threat because he was in his cell the entire

15  time, and he never acted aggressively.

16       Plaintiff was placed in a holding cell for about nine hours.  Twice during this time,

17  Defendant O'Neill came and stood over Plaintiff, sneering down at him with an intimidating look,

18  but saying nothing.  Plaintiff believes that he intended to intimidate Plaintiff.

19       At 6:40 a.m., Plaintiff asked a passing deputy what time it was.  Ten minutes later,

20  Defendants Smith, O'Neill and Thompson placed Plaintiff back into his cell.  Once the handcuffs

21  were taken off, Plaintiff refused to remove his arm out of the cell door's food port.  Defendants

22  Smith and O'Neill became hostile, saying "Pull your fucking arm in, dude," or "what the fuck is

23  up with you?"  ECF No. 1, at 5.  Deputy Alvarez asked, "just tase him now?"  ECF No. 1 at, 5.

24  Defendant O'Neill then grabbed Plaintiff's arm and wrist and began twisting and turning them,

25  just as Defendant Smith had the night before.  Deputy Alvarez and Defendant Smith just watched.

26       Plaintiff turned with the assault and remained calm, and asked Defendant O'Neill, "what's

27  wrong with you...why are you trying to break my arm?  This is out of line."  ECF No. 1, at 7.

28  Plaintiff's pleas only ignited Defendant O'Neill and he said several racial slurs, such as "You

1  don't want to pull in your arm, you fucking monkey." ECF No. 1, at 7.  After ten or twelve

2  seconds, Defendant O'Neill released Plaintiff's arm with more curses and racial slurs.  Deputy

3  Alvarez again asked if he should tase Plaintiff.  Deputy Alvarez grabbed his taser and Defendant

4  O'Neill radioed and called all deputies to the fourth floor.  Defendant O'Neill then grabbed

5  Plaintiff's arm and began twisting it again.  Defendant Smith said he was going to open the door

6  and Defendant O'Neill nodded his head.  Defendant Smith unlocked the door and began violently

7  pulling at Plaintiff's shoulders and shirt and shoving Plaintiff in the neck, torso and mid-section.

8  Both of Plaintiff's arms were in the food port, holding him in place.  Plaintiff remained calm and

9  asked Defendant Smith why he was doing this.  Defendant Smith then lifted Plaintiff's feet 4.5

10 feet off the floor and pushed down on his shoulders.

11      When Defendant Thompson and other deputies approached, the attack intensified.  To

12 avoid a head injury, Plaintiff was able to place one arm on the ground.  His other arm was released

13 and pushed through the food port.  Plaintiff's legs were thrown inside of the cell, out of the

14 doorway.  While Plaintiff was completely still on the ground, some deputies gave him boot-kicks

15 to the legs, side and back.  Plaintiff attempted to curl-up and Defendant Sandoval pressed

16 Plaintiff's head to the ground with one hand as his knee was on Plaintiff's upper rib section.  He

17 then delivered three or four closed-fist blows to Plaintiff's thigh and his arm, which was covering

18 his face.  Defendant Smith was kicking Plaintiff in the shin and knee.

19      At some point, someone said, "all right," and Defendant Sandoval rose up and backed out

20 of the cell.  Plaintiff asked if they were just going to leave him on the floor, and then asked to see

21 the nurse.  Defendant Sandoval attempted to rush back in while Plaintiff was still on the ground.

22 Instead, he rushed into the corner and Plaintiff put up his arm to brace himself incase Sandoval

23 fell.  Plaintiff said, "Please be careful, don't hurt yourself trying to hurt me." ECF No. 1, at 9.

24 However, Defendant Sandoval looked down at Plaintiff and then punched him in the face, busting

25 open his lip and hitting his head off the floor.  Defendant Sandoval got up and kicked Plaintiff

26 once or twice before he left.   Plaintiff asked if he would receive medical attention, but he did not

27 receive any.

28

1    Approximately fifteen minutes later, Deputy Abbott began his shift and walked the tier.

2    Plaintiff asked for medical attention, and asked that he be able to see the shift sergeant or

3    lieutenant.   Deputy Abbott asked Plaintiff what happened, and Plaintiff showed him his lip and

4    told him that he had been beaten by the previous shift deputies.  Deputy Abbott told Plaintiff that

5    the nurse would be on the tier later, but he never informed the nurse of Plaintiff's situation.

6    When the pill pass nurse arrived about two and one-half hours later, Plaintiff informed her

7    of his condition.  Plaintiff alleges that she was unaware, and was indifferent to the injuries he

8    showed her.  She instructed Plaintiff to fill out a sick-call request ship, which he did and turned

9    immediately.  However, Plaintiff was never called on by medical staff.

10    At some point, Deputy Abbott issued Plaintiff a grievance form, which Plaintiff filled out

11    and returned to him.  Deputy Abbott failed to issue Plaintiff his first level receipt.

12    Shortly after, Plaintiff was moved to a different section of the jail and no one ever spoke to

13    him about the incident.

14    Based on these facts, Plaintiff alleges violations of the Eighth and Fourteenth

15    Amendments.  He requests equitable and monetary relief.

16    **C.**      **DISCUSSION**

17        1.    Plaintiff's Status

18    Plaintiff states that he was housed in the Tulare County Jail at the time of the events at

19    issue.  However, he does not indicate whether he was a pretrial detainee or a convicted inmate.

20    Plaintiff cites both the Eighth Amendment and the Due Process Clause, but the applicable standard

21    for excessive force depends on Plaintiff's status.  In amending, Plaintiff must notify the Court of

22    his status at the time of the events. To the extent the standards are different, the Court will provide

23    both below.

24        2.    Excessive Force

25    As noted above, it is unclear whether Plaintiff was a convicted prisoner or a pretrial

26    detainee at the time of the events in question.  The Eighth Amendment's prohibition against cruel

27    and unusual punishment only protects convicted prisoners.  Bell v. Wolfish, 441 U.S. 520, 535, 99

28    S.Ct. 1861 (1979); Graham v. Connor, 490 U.S. 386, 395 n.10, 109 S.Ct. 1865 (1989).  It is the

1   Due Process Clause of the Fourteenth Amendment that protects pretrial detainees from the use of

2   excessive force which amounts to punishment, Gibson v. County of Washoe, Nev., 290 F.3d 1175,

3   1197 (9th Cir. 2002) (citing Graham, 490 U.S. at 395 n.10), and the Fourth Amendment sets the

4   applicable constitutional limitations for considering such claims, Lolli v. County of Orange, 351

5   F.3d 410, 415 (9th Cir. 2003) (citing Gibson, 290 F.3d at 1198) (quotation marks omitted).

6       The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments

7   Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995 (1992)

8   (citations omitted). For claims of excessive physical force, the issue is "whether force was applied

9   in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

10  harm." Hudson, 503 U.S. at 7. Although *de minimis* uses of force do not violate the Constitution,

11  the malicious and sadistic use of force to cause harm always violates the Eighth Amendment,

12  regardless of whether or not significant injury is evident. Hudson, 503 U.S. at 9-10; Oliver v.

13  Keller, 289 F.3d 623, 628 (9th Cir. 2002).

14      In resolving claims of excessive force brought by pretrial detainees, the Fourth

15  Amendment's objective reasonableness standard applies. Lolli, 351 F.3d at 415. The inquiry is

16  whether Defendants' actions were objectively reasonable in light of the facts and circumstances

17  confronting them, without regard to their underlying intent or motivation. Id. (citing Graham, 490

18  U.S. at 397) (quotation marks omitted). The nature and quality of the intrusion on Plaintiff's

19  Fourth Amendment interests must be balanced against the countervailing governmental interests at

20  stake. Id. (citing Graham, 490 U.S. at 397) (quotation marks omitted). Factors may include the

21  severity of the incident giving rise to the use of force, whether Plaintiff posed an immediate threat

22  to the safety of Defendants or others, and whether Plaintiff was actively attempting to avoid being

23  subdued or brought under control. See Gibson, 290 F.3d at 1198 (citation omitted).

24          *Defendant Sandoval*

25      Plaintiff alleges that Defendant Sandoval punched him repeatedly and kicked him while he

26  was down in his cell and not resisting. Under either the Eighth Amendment or Fourth

27  Amendment, this states a claim for relief. However, prior to proceeding on this claim, Plaintiff

28  must provide the Court with his status.

1          *Defendant Thompson*

2          As to Defendant Thompson, Plaintiff only alleges that he instructed Plaintiff to take his

3    arm out of the food port, or be tased.  Under either the Eighth or Fourteenth Amendment, this does

4    not state a claim.  This is nothing more than a direct order given to an inmate who was not

5    obeying.  Threats do not rise to the level of a constitutional violation.  Gaut v. Sunn, 810 F.2d 923,

6    925 (9th Cir. 1987).

7          *Defendants Smith and O'Neill*

8          Whether Plaintiff states a claim against Defendants Smith and O'Neill depends on his

9    status, and the Court will analyze the claims further once Plaintiff provides this information to the

10   Court.

11         However, to the extent Plaintiff suggests that intimidation and/or using racial slurs violates

12   the Constitution, he is incorrect.  Mere verbal harassment or abuse alone is not sufficient to state a

13   constitutional deprivation under 42 U.S.C. § 1983.  Oltarzewski v. Ruggiero, 830 F.2d 136, 139

14   (9th Cir. 1987).  Similarly, threats do not rise to the level of a constitutional violation.  Gaut, 810

15   F.2d at 925.

16         3.    Medical Care

17         While pretrial detainees' rights are protected under the Due Process Clause of the

18   Fourteenth Amendment, the standard for claims brought under the Eighth Amendment has long

19   been used to analyze pretrial detainees' conditions of confinement claims.  Simmons v. Navajo

20   County, Ariz., 609 F.3d 1101, 1017-18 (9th Cir. 2010); Clouthier v. County of Contra Costa, 591

21   F.3d at 1242; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  Therefore, regardless of

22   Plaintiff's status, the applicable legal standard is the same.

23         Here, Plaintiff alleges that he was denied medical care, but he fails to link any named

24   Defendant to the alleged deprivation.  While he mentions a nurse and Deputy Alvarez, neither are

25   named as Defendants and it is not clear whether he intends to state a claim against them.  While he

26   may ultimately be able to state a medical indifference claim, he must link Defendants with the

27   actions at issue.  Iqbal, 556 U.S. at 676-77;

28         He will be permitted to amend.

7

1  **D.  <u>CONCLUSION AND ORDER</u>**

2      Plaintiff's complaint states certain claims against Defendant Sandoval, but it cannot

3  proceed until he informs the Court whether he was a pretrial detainee or convicted prisoner at the

4  time of the events at issue.  Plaintiff may also amend his claims against other Defendants, as noted

5  above.

6      Plaintiff has not previously been provided with notice of the deficiencies in his claims and

7  the Court will provide Plaintiff with the opportunity to file an amended complaint, if he believes,

8  in good faith, he can cure the identified deficiencies.  <u>Akhtar v. Mesa</u>, 698 F.3d 1202, 1212-13

9  (9th Cir. 2012); <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130-31 (9th Cir. 2000); <u>Noll v. Carlson</u>, 809

10  F.2d 1446, 1448-49 (9th Cir. 1987).  If Plaintiff amends, he may not change the nature of this suit

11  by adding new, unrelated claims in his amended complaint.  <u>George v. Smith</u>, 507 F.3d 605, 607

12  (7th Cir. 2007).

13      If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but under

14  section 1983, it must state what each named defendant did that led to the deprivation of Plaintiff's

15  constitutional rights and liability may not be imposed on supervisory personnel under the mere

16  theory of respondeat superior, <u>Iqbal</u>, 556 U.S. at 676-77; <u>Starr v. Baca</u>, 652 F.3d 1202, 1205-07

17  (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012).  Although accepted as true, the "[f]actual

18  allegations must be [sufficient] to raise a right to relief above the speculative level. . ."  <u>Twombly</u>,

19  550 U.S. at 555 (citations omitted).

20      Finally, an amended complaint supercedes the original complaint, <u>Lacey v. Maricopa</u>

21  <u>County</u>, 693 F.3d 896, 907 (9th Cir. 2012) (en banc), and it must be "complete in itself without

22  reference to the prior or superceded pleading,"  Local Rule 220.

23      Based on the foregoing, it is HEREBY ORDERED that:

24      1.   Plaintiff's complaint is DISMISSED WITH LEAVE TO AMEND;

25      2.   The Clerk's Office shall send Plaintiff a complaint form;

26      3.   Within **thirty (30) days** from the date of service of this order, Plaintiff must

27          file an amended complaint curing the deficiencies identified by the Court in this

28          order;

4.   If Plaintiff fails to comply with this order, this action will be dismissed, without

prejudice, for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **July 1, 2015**                         /s/ *Dennis L. Beck*

UNITED STATES MAGISTRATE JUDGE