# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMIAH D. VICKERS, | Case No. 1:15-cv-00129 DLB (PC) |
| Plaintiff, | ORDER FINDING COGNIZABLE CLAIMS AND DISMISSING REMAINING CLAIM |
| v. | |
| THOMPSON, et al., | |
| Defendants. | |

Plaintiff Jeremiah D. Vickers ("Plaintiff"), a state inmate in the custody of the California Department of Corrections and Rehabilitation, is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on January 26, 2015. Pursuant to Court order, he filed a First Amended Complaint on August 31, 2015. He names Tulare County Sheriff Sgt. Thompson and Tulare County Deputies Smith, O'Neil and Sandoval as Defendants.[1]

**A.    SCREENING STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on February 4, 2015.

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.    ALLEGATIONS IN COMPLAINT**

Plaintiff is currently incarcerated at California State Prison- Los Angeles County. At the relevant times, he was a convicted inmate housed at the Tulare County Jail while awaiting transfer to a CDCR facility. Plaintiff was housed in a single status cell in administrative segregation. He is a documented Mental Health patient and was receiving several varieties and doses of psychotropic medication during the day. Plaintiff is African-American.

On August 27, 2014, at night medication pill pass, Defendant Smith opened the food port on Plaintiff's cell door to allow the nurse to hand him medication.  Plaintiff stuck his arm out of the food port in a "non-threatening manner," dangling at the elbow downward, and "refused to put it back in, hindering the deputy's ability to close it."  ECF No. 18, at 3.  Defendant Smith told Plaintiff to take his arm out, and Plaintiff refused.  Defendant Smith audibly exhaled and then grabbed Plaintiff's arm and hand with both of his hands and began "twisting, turning and pulling them violently in different directions in an attempt to dislocate and/or break them/it."  ECF No. 18, at 8.  Plaintiff was able to non-aggressively turn with Defendant to prevent a break or dislocation.  The event lasted for fourteen seconds.  After about seven seconds, Plaintiff asked why he was trying to break his arm.  Defendant Smith released Plaintiff's arm and shoved it back into the door saying, "motherfucker!"  ECF No. 18, at 8.

Defendant Smith then told the nurse to leave and radioed his sergeant and co-workers.  When the other deputies arrived, Defendant Smith, with a smirk, said, "He won't stick his arm in.  I tried to break that motherfucker."  ECF No. 18, at 8.  Defendant Thompson arrived and instructed Plaintiff to take his arm out of the food port, or else he'd be tased.  At the suggestion of another officer, Plaintiff was simply handcuffed and placed in a downstairs holding cell.  Plaintiff contends that he was never a physical threat because he was in his cell the entire time, and he never acted aggressively.

Plaintiff was placed in a holding cell for about nine hours.  Twice during this time, Defendant O'Neil came and stood over Plaintiff, sneering down at him with an intimidating look, but saying nothing.  Plaintiff believes that he intended to intimidate Plaintiff.

At 6:40 a.m., Plaintiff asked a passing deputy what time it was.  Ten minutes later, Defendants Smith and O'Neil, along with Deputy Alverez, placed Plaintiff back into his cell.  Once the handcuffs were taken off, Plaintiff refused to remove his arm out of the cell door's food port.  Defendants Smith and O'Neil became hostile, saying "Pull your fucking arm in, dude," or "what the fuck is up with you?"  ECF No. 18, at 6.  Deputy Alvarez asked, "just tase him now?"  ECF No. 18 at, 6.  Defendant O'Neil then grabbed Plaintiff's arm and wrist and violently twisting

///

and turning them, just as Defendant Smith had the night before.  Deputy Alvarez and Defendant Smith just watched.

Plaintiff turned with the assault and remained calm, and asked Defendant O'Neil, "what's wrong with you...why are you trying to break my arm?  This is out of line." ECF No. 18, at 12. Plaintiff's pleas only ignited Defendant O'Neil and he said several racial slurs, such as "You don't want to pull in your arm, you fucking monkey." ECF No. 18, at 12.  After ten or twelve seconds, Defendant O'Neil released Plaintiff's arm and added more curses and racial slurs.  Deputy Alvarez again asked if he should tase Plaintiff.  Deputy Alvarez grabbed his taser and Defendant O'Neil radioed and called all deputies to the fourth floor.  Defendant O'Neil then grabbed Plaintiff's arm and began twisting it again.  Defendant Smith said he was going to open the door and Defendant O'Neil nodded his head.  Defendant Smith unlocked the door and began violently pulling at Plaintiff's shoulders and shirt and shoving Plaintiff in the neck, torso and mid-section.  Both of Plaintiff's arms were in the food port, holding him in place.  Plaintiff remained calm and asked Defendant Smith why he was doing this.  Defendant Smith then lifted Plaintiff's feet 4.5 feet off the floor and pushed down on his shoulders.  Plaintiff remained silent and kept his body still. Defendant Smith dropped one of his legs.

When Defendant Thompson and other deputies approached, the attack intensified.  One deputy grabbed Plaintiff's other leg off the ground and another began to yank Plaintiff's torso and mid-section, all while his arm and hand were being twisted and scraped on the other side of the door.  To avoid a head injury, Plaintiff was able to place one arm on the ground.  His other arm was released and pushed through the food port.  Plaintiff's legs were thrown inside the cell, out of the doorway.  While Plaintiff was completely still on the ground, some deputies gave him boot-kicks to the legs, side and back.  Plaintiff attempted to curl-up and Defendant Sandoval pressed Plaintiff's head to the ground with one hand as his knee was on Plaintiff's upper rib section.  He then delivered three or four closed-fist blows to Plaintiff's thigh and his arm, which was covering his face.  Defendant Smith was kicking Plaintiff in the shin and knee.

At some point, someone said, "all right," and Defendant Sandoval rose up and backed out of the cell.  Plaintiff asked if they were just going to leave him on the floor, and then asked to see

4

the nurse.  Defendant Sandoval attempted to rush back in while Plaintiff was still on the ground.  Instead, he rushed into the corner of the bed frame, and Plaintiff put up his arm to brace himself in case Sandoval fell.  Plaintiff said, "Please be careful, don't hurt yourself trying to hurt me."  ECF No. 18, at 14.  However, Defendant Sandoval looked down at Plaintiff and then punched him in the face, busting open his lip and hitting his head off the floor.  Defendant Sandoval got up and kicked Plaintiff once or twice before he left.   Plaintiff asked if he would receive medical attention, but he did not receive any.

Approximately fifteen minutes later, Deputy Abbott began his shift and walked the tier.  Plaintiff asked for medical attention, and asked that he be able to see the shift sergeant or lieutenant.   Deputy Abbott asked Plaintiff what happened, and Plaintiff showed him his lip and told him that he had been beaten by the previous shift deputies.  Deputy Abbott told Plaintiff that the nurse would be on the tier later, but he never informed the nurse of Plaintiff's situation.

When the pill pass nurse arrived about two and one-half hours later, Plaintiff informed her of his condition.  Plaintiff alleges that she was unaware, and was indifferent to the injuries he showed her.  She instructed Plaintiff to fill out a sick-call request ship, which he did and turned in immediately.  However, Plaintiff was never called on by medical staff.

Shortly after, Plaintiff was moved to a different section of the jail and no one ever spoke to him about the incident.

Based on these facts, Plaintiff alleges violations of the Eighth and Fourteenth Amendments.  He requests equitable and monetary relief.

**C.**      **DISCUSSION**

    1.      Excessive Force

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment.  Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995 (1992) (citations omitted).  For claims of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson, 503 U.S. at 7.  Although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates the Eighth Amendment,

regardless of whether or not significant injury is evident. Hudson, 503 U.S. at 9-10; Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

*Defendant Sandoval*

Plaintiff alleges that Defendant Sandoval punched him repeatedly and kicked him while he was down in his cell and not resisting. This is sufficient to state a claim under the Eighth Amendment.[2]

*Defendant Thompson*

As to Defendant Thompson, Plaintiff only alleges that he instructed Plaintiff to take his arm out of the food port, or be tased. This is nothing more than a direct order given to an inmate who was not obeying. Threats do not rise to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). The Court explained this in the prior screening order.

Plaintiff therefore fails to state an excessive force claim against Defendant Thompson.

*Defendants Smith and O'Neil*

Plaintiff's allegations are sufficient to state a claim under the Eighth Amendment for the use of excessive force against Defendants Sandoval and O'Neil.

However, to the extent Plaintiff suggests that intimidation and/or using racial slurs violates the Constitution, he is incorrect. Mere verbal harassment or abuse alone is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). Similarly, threats do not rise to the level of a constitutional violation. Gaut, 810 F.2d at 925.

2. Medical Care

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that

---

[2] Plaintiff will be instructed on service by separate order.

6

failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

Here, Plaintiff alleges that after he was kicked and punched in the face, he asked Defendants to see a nurse, but he did not receive any. Construed liberally, Plaintiff states a claim for deliberate indifference to a serious medical need against Defendants Sandoval, Thompson, Smith and O'Neil.

### 3. Procedural Due Process

Finally, Plaintiff alleges violations of procedural due process. Specifically, he contends that his procedural due process rights were violated when (1) Defendants Smith and O'Neil were deliberately indifferent to mandated cell-extraction techniques; and (2) all Defendants failed to provide medical care.

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). To state a claim, Plaintiff must first identify the interest at stake. Wilkinson, 545 U.S. at 221. Liberty interests may arise from the Due Process Clause itself or from state law. Id. The Due Process Clause does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue. Id. at 221-23 (citing Sandin v. Conner, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995)) (quotation marks omitted). Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the

///

inmate in relation to the ordinary incidents of prison life. Id. at 221(citing Sandin, 515 U.S. at 484) (quotation marks omitted); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

There are no procedural due process protections related to cell extractions and/or the receipt of medical care. Plaintiff therefore fails to state a claim under the Fourteenth Amendment.

### D.     CONCLUSION AND ORDER

Plaintiff's First Amended Complaint states (1) an Eighth Amendment excessive force claim against Defendants Smith, Sandoval and O'Neil; and (2) an Eighth Amendment deliberate indifference to a serious medical need against Defendants Smith, Sandoval, O'Neil and Thompson. The remaining claims do not state a claim for relief and are DISMISSED.

IT IS SO ORDERED.

Dated:   **January 26, 2016**               /s/ *Dennis L. Beck*
                                            UNITED STATES MAGISTRATE JUDGE

8