# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMIAH D. VICKERS,<br><br>        Plaintiff,<br><br>   v.<br><br><br><br>THOMPSON, et al.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:15-cv-00129-SAB (PC)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT<br>(ECF No. 56)<br><br>ORDER DIRECTING CLERK OF COURT TO FILE SECOND AMENDED COMPLAINT<br>(ECF No. 59)<br><br>ORDER FINDING SERVICE OF SECOND AMENDED COMPLAINT APPROPRIATE AS TO DEFENDANTS AKIN, ALVAREZ, WILLIAMS, AND STELOW, AND FORWARDING PLAINTIFF THE NECESSARY SERVICE OF PROCESS DOCUMENTS FOR COMPLETION AND RETURN WITHIN **THIRTY DAYS** |

Plaintiff Jeremiah D. Vickers ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. The parties have consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 8, 40, 65); Local Rule 302. Currently before the Court is Plaintiff's motion for leave to file a second amended complaint, filed on November 30, 2016. (ECF No. 56.)[1]

---

[1] It is typically this Court's practice to promote efficiency and conserve the resources of the parties and the Court by ruling on motions to amend pleadings as soon as possible. As the parties are aware, unfortunately in this case the Court's resources were burdened over the last several months by matters concerning service of process and related issues, which were only recently resolved. The parties' patience in this regard is appreciated.

# I.

## RELEVANT BACKGROUND

This action proceeds on Plaintiff's first amended complaint, filed August 31, 2015, alleging excessive force against Defendants Smith and Sandoval, and deliberate indifference against Defendants Thompson, Smith and Sandoval, in violation of the Eighth Amendment. (ECF No. 18.) On March 30, 2016, following some delays by Plaintiff in submitting the necessary documents, the Court ordered the United States Marshal to serve a summons and first amended complaint on Defendants. (ECF No. 28.)

On June 9, 2016, Defendants Smith and Thompson filed an answer to the first amended complaint. (ECF No. 35.) Following issues concerning service of process, on May 11, 2017, Defendant Sandoval filed an answer to the first amended complaint. (ECF No. 64.)[2]

On June 10, 2016, the Court issued a discovery and scheduling order. (ECF No. 36.) Among other deadlines, that order set the deadline for amending pleadings as October 11, 2016, and the discovery cut-off deadline as November 10, 2016.

On September 15, 2016, the United States Marshal returned the summons and complaint unexecuted as to Defendant Sandoval. (ECF No. 48.)

On October 11, 2016, Plaintiff filed a motion to extend the deadline to file amended pleadings. (ECF No. 49.) The Court granted Plaintiff's request and extended that deadline to December 11, 2016. (ECF No. 50.)

On November 30, 2016, Plaintiff filed the subject motion for leave to file a second amended complaint. (ECF No. 56.) Defendants filed an opposition to the motion on December 1, 2016. (ECF No. 58.) The time to file any reply has passed, and none was filed.

Accordingly, the motion is submitted without oral argument. Local Rule 230(l).

---

[2] This case also proceeded on certain claims against Deputy O'Neil. As alluded to above, there were numerous motions, orders to show cause, orders to the United States Marshal, filings by the parties, rulings on requests for default, and multiple attempts at service in this case since the Court originally ordered all defendants in this matter to be served.

Ultimately, Deputy O'Neil was dismissed from this action, without prejudice, for the failure to effect service of process, on July 11, 2017, (ECF No. 72).

## II.

## LEGAL STANDARD

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend the party's pleading once as a matter of course twenty-one days after serving, or if a response was filed, within twenty-one days after service of the response. Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend only by leave of the court or by written consent of the adverse party, and leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2).

Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" <u>AmerisourceBergen Corp. v. Dialysis West, Inc.</u>, 465 F.3d 946, 951 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)). However, courts "need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in the litigation; or (4) is futile." <u>AmerisourceBergen Corp.</u>, 465 F.3d at 951.

## III.

## DISCUSSION

### A.    Summary of First Amended Compliant

At the time of the events at issue in this action, Plaintiff was a convicted inmate housed at the Tulare County Jail while awaiting transfer to a CDCR facility. Plaintiff was housed in a single status cell in administrative segregation. He is a documented Mental Health patient and was receiving several varieties and doses of psychotropic medication during the day. Plaintiff is African-American.

On August 27, 2014, at night medication pill pass, Defendant Smith opened the food port on Plaintiff's cell door to allow the nurse to hand him medication. Plaintiff stuck his arm out of the food port in a "non-threatening manner," dangling at the elbow downward, and "refused to put it back in, hindering the deputy's ability to close it." (ECF No. 18, at 3.) Defendant Smith told Plaintiff to take his arm out, and Plaintiff refused. Defendant Smith audibly exhaled and then grabbed Plaintiff's arm and hand with both of his hands and began "twisting, turning and pulling them violently in different directions in an attempt to dislocate and/or break them/it." (ECF No. 18, at 8.) Plaintiff was able to non-aggressively turn with Defendant to prevent a break

or dislocation. The event lasted for fourteen seconds. After about seven seconds, Plaintiff asked why he was trying to break his arm. Defendant Smith released Plaintiff's arm and shoved it back into the door saying, "motherfucker!" (ECF No. 18, at 8.)

Defendant Smith then told the nurse to leave and radioed his sergeant and co-workers. When the other deputies arrived, Defendant Smith, with a smirk, said, "He won't stick his arm in. I tried to break that motherfucker." (ECF No. 18, at 8.) Defendant Thompson arrived and instructed Plaintiff to take his arm out of the food port, or else he'd be tasered. At the suggestion of another officer, Plaintiff was simply handcuffed and placed in a downstairs holding cell. Plaintiff contends that he was never a physical threat because he was in his cell the entire time, and he never acted aggressively.

Plaintiff was placed in a holding cell for about nine hours. Twice during this time, Defendant O'Neil came and stood over Plaintiff, sneering down at him with an intimidating look, but saying nothing. Plaintiff believes that he intended to intimidate Plaintiff.

At 6:40 a.m., Plaintiff asked a passing deputy what time it was. Ten minutes later, Defendants Smith and O'Neil, along with Deputy Alverez, placed Plaintiff back into his cell. Once the handcuffs were taken off, Plaintiff refused to remove his arm out of the cell door's food port. Defendants Smith and O'Neil became hostile, saying "Pull your fucking arm in, dude," or "what the fuck is up with you?" (ECF No. 18, at 6.) Deputy Alvarez asked, "just tase him now?" (ECF No. 18 at, 6.) Defendant O'Neil then grabbed Plaintiff's arm and wrist and violently twisting and turning them, just as Defendant Smith had the night before. Deputy Alvarez and Defendant Smith just watched.

Plaintiff turned with the assault and remained calm, and asked Defendant O'Neil, "What's wrong with you...why are you trying to break my arm? This is out of line." (ECF No. 18, at 12.) Plaintiff's pleas only ignited Defendant O'Neil and he said several racial slurs, such as "You don't want to pull in your arm, you fucking monkey." (ECF No. 18, at 12.) After ten or twelve seconds, Defendant O'Neil released Plaintiff's arm and added more curses and racial slurs.

///

4

Deputy Alvarez again asked if he should tase Plaintiff. Deputy Alvarez grabbed his taser and Defendant O'Neil radioed and called all deputies to the fourth floor. Defendant O'Neil then grabbed Plaintiff's arm and began twisting it again. Defendant Smith said he was going to open the door and Defendant O'Neil nodded his head. Defendant Smith unlocked the door and began violently pulling at Plaintiff's shoulders and shirt and shoving Plaintiff in the neck, torso and mid-section. Both of Plaintiff's arms were in the food port, holding him in place.

Plaintiff remained calm and asked Defendant Smith why he was doing this. Defendant Smith then lifted Plaintiff's feet 4.5 feet off the floor and pushed down on his shoulders. Plaintiff remained silent and kept his body still. Defendant Smith dropped one of his legs.

When Defendant Thompson and other deputies approached, the attack intensified. One deputy grabbed Plaintiff's other leg off the ground and another began to yank Plaintiff's torso and mid-section, all while his arm and hand were being twisted and scraped on the other side of the door. To avoid a head injury, Plaintiff was able to place one arm on the ground. His other arm was released and pushed through the food port. Plaintiff's legs were thrown inside the cell, out of the doorway. While Plaintiff was completely still on the ground, some deputies gave him boot-kicks to the legs, side and back. Plaintiff attempted to curl-up and Defendant Sandoval pressed Plaintiff's head to the ground with one hand as his knee was on Plaintiff's upper rib section. He then delivered three or four closed-fist blows to Plaintiff's thigh and his arm, which was covering his face. Defendant Smith was kicking Plaintiff in the shin and knee.

At some point, someone said, "all right," and Defendant Sandoval rose up and backed out of the cell. Plaintiff asked if they were just going to leave him on the floor, and then asked to see the nurse. Defendant Sandoval attempted to rush back in while Plaintiff was still on the ground. Instead, he rushed into the corner of the bed frame, and Plaintiff put up his arm to brace himself in case Sandoval fell. Plaintiff said, "Please be careful, don't hurt yourself trying to hurt me." (ECF No. 18, at 14.) However, Defendant Sandoval looked down at Plaintiff and then punched him in the face, busting open his lip and hitting his head off the floor. Defendant Sandoval got up and kicked Plaintiff once or twice before he left. Plaintiff asked if he would receive medical attention, but he did not receive any.

Approximately fifteen minutes later, Deputy Abbott began his shift and walked the tier. Plaintiff asked for medical attention, and asked that he be able to see the shift sergeant or lieutenant. Deputy Abbott asked Plaintiff what happened, and Plaintiff showed him his lip and told him that he had been beaten by the previous shift deputies. Deputy Abbott told Plaintiff that the nurse would be on the tier later, but he never informed the nurse of Plaintiff's situation.

When the pill pass nurse arrived about two and one-half hours later, Plaintiff informed her of his condition. Plaintiff alleges that she was unaware, and was indifferent to the injuries he showed her. She instructed Plaintiff to fill out a sick-call request ship, which he did and turned in immediately. However, Plaintiff was never called on by medical staff.

Shortly after, Plaintiff was moved to a different section of the jail and no one ever spoke to him about the incident.

**B.     Summary of Plaintiff's Proposed Second Amended Complaint**

The factual allegations of Plaintiff's proposed second amended complaint are largely the same as the allegations of the first amended complaint, with a few pertinent exceptions. Plaintiff's proposed second amended complaint now names Deputy Alvarez as a defendant, with the same factual allegations against him as summarized above.

Plaintiff also names some new defendants. Plaintiff alleges that Deputy Akin is one of the previously un-named responding deputies who engaged in the alleged assault. Specifically, Plaintiff alleges that Deputy Akin yanked Plaintiff's torso and mid-section, and was one of the deputies that gave him boot-kicks to the legs, side and back while he was completely still on the ground.

Plaintiff further names Sergeant Williams and Lieutenant Stelow as defendants.  Plaintiff alleges that, after the incidents discussed above, he was escorted to and placed in a downstairs holding cell. While in this holding cell, Sergeant Williams took photographs of parts of Plaintiff's body, at the instruction of Lieutenant Stelow. Plaintiff further alleges that Lieutenant Stelow and Sergeant Williams understood Plaintiff was involved in a use of force according to their reports, but they failed to ensure that he had medical care.

///

### C.     Parties' Arguments

Plaintiff seeks leave to file a second amended complaint to name as additional defendants Lieutenant Stelow, Sergeant Williams, Deputy Alvarez, and Deputy Akin. Plaintiff asserts that leave should be granted pursuant to Rules 15(a) and 19(a), because he has determined that these additional defendants' actions or failure to act constituted violations of his rights, and leave to amend should be freely given.

Defendants oppose Plaintiff's motion. Defendants argue that the more stringent "good cause" standard of Rule 16(b) should apply to Plaintiff's motion for leave to amend his complaint, rather than the "freely given" standard of Rule 15(a), and that Plaintiff has not met that standard here. Defendants further argue that Plaintiff's amendment here is unduly delayed, and will prejudice them. Finally, Defendants seek to have this action dismissed for the failure to join an indispensable party.

### D.     Analysis

Defendants raise as a threshold issue whether the standard of Rule 15(a) or Rule 16(b) is the proper standard to apply to this motion for leave to amend. As noted above, motions to amend are generally governed by Rule 15(a) of the Federal Rules of Civil Procedure. However, Rule 15(a) does not control once a court has issued a pretrial scheduling order. See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607–08 (9th Cir. 1992). Instead, Rule 16(b) supplies the governing standard. Id. at 608. Under that standard, the pretrial scheduling order "may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). The party seeking to amend must show good cause. Johnson, 975 F.2d at 608.

Here, the Court previously evaluated the issue of good cause for amending the scheduling order in addressing Plaintiff's October 11, 2016 motion to extend the deadline to amend the pleadings. (ECF No. 49.) The Court considered Plaintiff's assertions that due to issues at his institution with the legal facilities and his need to obtain certain materials and discovery, he was unable to complete a proposed second amended complaint by the deadline. The Court found this sufficient good cause to grant Plaintiff's motion, as stated in its order issued on October 14, 2016 granting Plaintiffs' request. (ECF No. 50.)

Defendants now argue that they intended to oppose Plaintiff's request to extend the deadline to amend the pleadings because Plaintiff had sufficient months of time to amend his complaint by the relevant deadline, and relatively ample access to legal resources. The Court finds these contentions to be insufficient grounds for revisiting or reversing its earlier ruling. Plaintiff had shown sufficient diligence and good cause for an extension, and his proposed second amended complaint cites information that Plaintiff asserts was uncovered in discovery.

If the party seeking to amend its pleading shows good cause, then the Court evaluates the request in light of Rule 15(a)'s liberal standard. <u>Johnson</u>, 975 F.2d at 608. As noted above, leave to amend should be granted unless amendment (1) would cause prejudice to the opposing party, (2) is sought in bad faith, (3) creates undue delay, or (4) is futile. <u>Chudacoff v. Univ. Med. Ctr. of S. Nev.</u>, 649 F.3d 1143, 1152 (9th Cir. 2011); <u>AmerisourceBergen Corp.</u>, 465 F.3d at 951.

Defendants argue that there is undue delay here because Plaintiff's motion for leave to amend and proposed second amended complaint were not filed until a year and a half after his first amended complaint was filed. Defendants note that although Plaintiff did not name all of the parties that he seeks to add, he did mention some of their actions or failures to act and has known of the parties for some time.

The Court does not find Defendants arguments regarding undue delay persuasive here. As noted above, Plaintiff explained that he required additional time to conduct legal research on his claims and evaluate the discovery he was provided. Defendants submissions show that in July 2016 they provided at least 800 pages of discovery to Plaintiff, (ECF Nos. 41, 43), which may have reasonably taken substantial time for Plaintiff to evaluate. Plaintiff's proposed second amended complaint has attached incident reports and other documents that are marked to show they were produced in discovery.

Furthermore, his amended allegations state that he has identified from the discovery the identity of previously unknown prison officials. Plaintiff had previously alleged unnamed deputies were involved in the alleged assault he complains of, and now alleges in his proposed second amended complaint that "upon information and belief," one of the deputies who assaulted him was Deputy Akin, based on a report he received in discovery. (ECF No. 59, p. 16.)

Plaintiff also explains that although he was aware that Sergeant Williams had taken photographs of him, he was unaware that Sergeant Williams and Lieutenant Stelow had allegedly failed to instruct that he receive medical care despite their knowledge of the alleged assault and his condition. Thus, Plaintiff has sufficiently shown that he was unable to name as defendants Deputy Akin, Sergeant Williams and Lieutenant Stelow until he conducted discovery and confirmed a claim. The Court does not find bad faith or undue delay here in Plaintiff's conduct.

The Court does find some unexplained delay in Plaintiff now seeking to name Deputy Alvarez as a defendant. Plaintiff previously mentioned Deputy Alvarez in prior pleadings, and the Court specifically informed Plaintiff that because he did not name Deputy Alvarez as a defendant, it was not clear whether he intended to state any claim against Alvarez. (ECF No. 14, p. 7.) Plaintiff was permitted leave to amend, yet did not seek to name Deputy Alvarez as a defendant until now. However, as delay alone is generally an insufficient ground for denial of leave to amend, United States v. Webb, 655 F.2d 977, 980 (9th Cir.1981), the Court will turn to Defendants' arguments regarding the prejudice caused by the alleged delay here.

Prejudice to the opposing party carries the greatest weight in analyzing whether a motion to amend should be granted. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). Defendants first assert that they are prejudiced by Plaintiff's failure to provide any discovery to them, including his initial disclosures. This argument is not persuasive. To the extent Defendants believed Plaintiff failed to provide discovery which he was required to produce, they could have moved to compel such discovery and made the appropriate showing for relief. The alleged failure to provide discovery is not grounds to deny Plaintiff leave to amend here.

Defendants also assert that they are prejudiced here by the need to conduct additional discovery and further depose Plaintiff if new parties and claims are added. However, in this case the factual allegations underlying the additional excessive force claims and failure to provide medical treatments overlap significantly, and thus it appears any additional discovery should be minimal, given the overlap in the claims and legal theories. Furthermore the increased costs of litigation for additional discovery does not show prejudice. See Webb, 655 F.2d at 980.

Defendants further argue that they are prejudiced because to the extent Plaintiff seeks to add new claims and new parties concerning the August 2014 incident, those claims are outside of the applicable statute of limitations. This argument is made in passing and without much support or analysis, and the statute of limitations is not given.

For claims brought under 42 U.S.C. § 1983, the applicable statute of limitations is California's statute of limitations for personal injury actions. See Wallace v. Kato, 549 U.S. 384, 387-88 (2007). In California, there is a two-year statute of limitations in § 1983 cases. See Cal. Civ. Proc. Code § 335.1; Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004). But state tolling statutes do apply to § 1983 actions. See Elliott v. City of Union City, 25 F.3d 800, 802 (citing Hardin v. Straub, 490 U.S. 536, 543-44 (1998)). Accordingly, prisoners generally have four years from the time the claim accrues to file their action. Cal. Civ. Pro. Code § 352.1(a). Thus, the Court does not find that Plaintiff's proposed claims are beyond the applicable statute of limitations here.

Finally, Defendants argue that because Plaintiff argued in his motion to amend that he should be granted leave under Federal Rule of Civil Procedure 19(a), his action should be dismissed for the failure to join indispensable parties. Specifically, Defendants assert that because Rule 19(a) concerns joinder of indispensable parties and Plaintiff mentioned the rule in his motion, he is effectively conceding that these previously unnamed defendants were "indispensable" to this action, and thus his failure to join these indispensable parties warrants dismissal of this action in its entirety.

Federal Rule of Civil Procedure 12(b)(7) permits a Court to dismiss an action for failure to join a party whose presence is needed for just adjudication under Federal Rule of Civil Procedure 19. See Confederated Tribes of Chehalis Indian Reservation v. Lujan, 928 F.2d 1496, 1498 (9th Cir. 1991). In order to grant a dismissal on such grounds, courts are to consider: (1) whether an absent party is necessary to the action under Rule 19(a); (2) whether it is feasible to order that the absent necessary party be joined; and (3) if both the absent party is necessary and joinder is infeasible, then courts must determine, under Rule 19(b), "whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the

10

action must be dismissed." See E.E.O.C. v. Peabody Western Coal Co., 400 F.3d 774, 779–80 (9th Cir. 2005); Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 878 (9th Cir. 2004) (citations omitted).

Defendants have not shown that any of Plaintiff's proposed defendants were indispensable parties to this action, and the Court finds no merit to this argument. Plaintiff's appeal to Rule 19(a) appears to have been in error, and the Court finds that Defendants have shown no grounds for dismissal on this basis, or denial of the subject motion.

For these reasons, the Court in weighing the factors to be considered finds that the balance weights in favor of granting Plaintiff's motion for leave to amend. Thus, the Court will direct the clerk of the Court to file Plaintiff's second amended complaint on the docket.

The Court will now turn to screening Plaintiff's proposed additional claims.

**E.     Screen of Plaintiff's Proposed Second Amended Complaint**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

for the misconduct alleged.  Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

Here, Plaintiff seeks to add the following claims and defendants: (1) a claim for excessive force in violation of the Eighth Amendment against Deputy Akin, and a failure to intercede in the use of excessive force against Deputy Alvarez; (2) a claim for the violation of his procedural due process rights in violation of the Fourteenth Amendment against Deputy Akin; and (3) a claim for deliberate indifference to Plaintiff's risk of harm medical needs in violation of the Eighth Amendment against Deputy Akin, Sergeant Williams, Lieutenant Stelow and Deputy Alvarez. Thus, each of these proposed additional claims is screened below.

1. Excessive Force

The Cruel and Unusual Punishments Clause of the Eighth Amendment protects prisoners from the use of excessive physical force. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam); Hudson v. McMillian, 503 U.S. 1, 8-9 (1992). What is necessary to show sufficient harm under the Eighth Amendment depends upon the claim at issue, with the objective component being contextual and responsive to contemporary standards of decency. Hudson, 503 U.S. at 8 (quotation marks and citations omitted). For excessive force claims, the core judicial inquiry is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Wilkins, 559 U.S. at 37(quoting Hudson, 503 U.S. at 7) (quotation marks omitted). Bystander-officers can be liable for the failure to intervene in the use of excessive force where a bystander-officer has a realistic opportunity to intervene, but fails to do so. Lolli v. County of Orange, 351 F.3d 410, 418 (9th Cir. 2003); Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

Here, the Court finds that, liberally construed, Plaintiff has stated an excessive force claim against Deputy Akin, based on the allegations that Plaintiff was assaulted while he was lying on the ground and not resisting. The Court further finds that Plaintiff has stated a claim

12

against Deputy Alvarez by alleging that when he was assaulted, Deputy Alvarez stood by just looking, and did not radio for help or otherwise intercede.

        2.      Deliberate Indifference

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

Plaintiff alleges that after he was injured in the assault, he requested medical attention from those present, but none was received. Later, he was taken to a holding cell, and parts of his body were photographed by Sergeant Williams at Lieutenant Stelow's direction. Although they were aware of the incident and Plaintiff's injuries, they failed to ensure he received any medical care. Liberally construed, these allegations are sufficient to state a claim for deliberate indifference against Deputy Akin, Deputy Alvarez, Lieutenant Stelow and Sergeant Williams.

        3.      Procedural Due Process

Plaintiff finally alleges that his procedural due process rights were violated with Deputy Akin and other defendants inflicted a risk of harm on him and failed to respond with reasonable medical attention.

///

13

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221, 125 S. Ct. 2384 (2005). To state a claim, Plaintiff must first identify the interest at stake. <u>Wilkinson</u>, 545 U.S. at 221. Liberty interests may arise from the Due Process Clause itself or from state law. <u>Id</u>.

The Due Process Clause does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue. <u>Id</u>. at 221-23 (citing <u>Sandin v. Conner</u>, 515 U.S. 472, 481-84, 115 S. Ct. 2293 (1995)) (quotation marks omitted). Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. <u>Id</u>. at 221(citing <u>Sandin</u>, 515 U.S. at 484) (quotation marks omitted); <u>Myron v. Terhune</u>, 476 F.3d 716, 718 (9th Cir. 2007).

There are no procedural due process protections related to the alleged risk of harm here or the failure to receive medical care. Although Plaintiff attempts to characterize his claims as a due process deprivation, they are instead properly cognizable as identified above. Plaintiff therefore fails to state a claim under the Fourteenth Amendment for any due process violation.

Thus, the Court finds that Plaintiff's second amended complaint states additional claims for excessive force against Deputy Akin, for the failure to intervene against Deputy Alvarez, and for deliberate indifference to a serious medical need against Deputy Akin, Deputy Alvarez, Lieutenant Stelow and Sergeant Williams, in violation of the Eighth Amendment. Service will be initiated accordingly.

## IV.

## ORDER

For the foregoing reasons, it is HEREBY ORDERED that:

1.     Plaintiff's motion for leave to file a second amended complaint, filed on November 30, 2016 (ECF No. 56), is GRANTED;

*///*

14

2.      The Clerk of the Court is ordered to file Plaintiff's second amended complaint, lodged at ECF No. 59, as filed in this action on the date it was lodged;

3.      The Court finds that Plaintiff's second amended complaint states a cognizable claim for excessive force against Deputy Akin, for the failure to intervene against Deputy Alvarez, and for deliberate indifference to a serious medical need against Deputy Akin, Deputy Alvarez, Lieutenant Stelow and Sergeant Williams, in violation of the Eighth Amendment;

4.      Service shall be initiated on the following Defendants:

**Lieutenant Stelow, Tulare County Sheriff**

**Sergeant Williams, Tulare County Sheriff**

**Deputy Akin, Tulare County Sheriff**

**Deputy Alvarez, Tulare County Sheriff**

5.      The Clerk of the Court shall send Plaintiff four (4) USM-285 forms, four (4) summons, a Notice of Submission of Documents form, an instruction sheet and a copy of the second amended complaint, as filed;

6.      Within **thirty (30) days** from the date of this order, Plaintiff shall complete the attached Notice of Submission of Documents and submit the completed Notice to the Court with the following documents:

    a.   One completed summons for each Defendant listed above;

    b.   One completed USM-285 form for each Defendant listed above;

    c.   Five (5) copies of the endorsed second amended complaint, as filed; and

    d.   All CDCR Form 602 documentation submitted in relation to
         this case;

7.      Plaintiff need not attempt service on the defendants and need not request waiver of service.  Upon receipt of the above-described documents, the Court will direct the United States Marshal to serve the above-named defendants pursuant to Federal Rule of Civil Procedure 4 without payment of costs; and

///

///

1      8.      **The failure to comply with this order may result in sanctions, up to and**
2  **including dismissal of this action**.

3

4  IT IS SO ORDERED.

5  Dated:   **July 25, 2017**      _____

6                                                UNITED STATES MAGISTRATE JUDGE

16