Deanne H. Peterson, #147099
County Counsel for the County of Tulare
Kathleen A. Taylor, #131100
Chief Deputy County Counsel
Amy I. Terrible, #269475
Deputy County Counsel
2900 West Burrel, County Civic Center
Visalia, California 93291
Phone: (559) 636-4950
Fax: (559) 737-4319
E-mail: aterrible@co.tulare.ca.us

Attorneys for Defendants Michael Thompson, Ryan C. Smith and Hector B. Sandoval Jr.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMIAH D. VICKERS<br><br>Plaintiff,<br><br><br>v.<br><br>TULARE COUNTY SHERIFF SGT. THOMPSON, DEPUTY SMITH, DEPUTY O'NEIL, DEPUTY SANDOVAL, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES<br><br>Defendants. | Case Number: 1:15-CV-00129-SAB(PC)<br><br>**OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**<br><br>Trial Date:    None Set<br><br>Honorable Stanley A. Boone<br>U.S. Magistrate Judge |

///

///

///

///

///

///

///

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION                                                              4

II.   FACTUAL BACKGROUND                                                        4

III.  LAW AND ARGUMENT                                                          7

    A.    Legal Standards Governing a Motion to Compel             7

    B.    Plaintiff's Request for Admissions                       8

    C.    Plaintiff's Request for Production of Documents          12

    D.    Plaintiff's First Set of Interrogatories                 20

IV.   CONCLUSION                                                                25

County Counsel
Tulare County
Visalia, California

# TABLE OF AUTHORITIES

**Federal Case Law**                                                                    **Page**

*Ellis v. Cambra*, 2008 WL 860523, at *4 (E.D.Cal. Mar.27, 2008)                           7

*K'napp v. Adams,* 2014 WL 950353, at *5 (E.D.Cal. March 11, 2014)                         7

*Safeco of America v. Rawstron*, 181 F.R.D. 441, 447 (C.D.Cal. May 18, 1998)              10

*United Coal Companies v. Powell Construction Co.,* 839 F.2d 958, 968 (3d Cir.1988)       10

*Wilhelm v. Rotman*, 680 F. 3d. 113 (9th Cir. 2012)                                       11

*Williams v. Woodford*, 2010 WL 2490951, at *1, (E.D.Cal. June 16, 2010)                   8

*Zavala v. Rios*, 2015 WL 1236172, at *3 (E.D.Cal. March 17, 2015            7, 19, 23, 25


**Federal Statutes**

Fed. R. Civ. P 34(b)(1)(A)                                                             13, 17

Fed.R.Civ.P. 37(a)(3)(B)                                                                   7

1   DEFENDANTS SGT. THOMPSON, DEPUTY SMITH, and DEPUTY SANDOVAL,

2   hereby submit the following Opposition to Plaintiff's Motion to Compel Discovery.

### I.   INTRODUCTION

Plaintiff Jeremiah Vickers brings the present action involving claims of excessive force against Defendants, who were Deputy Sheriffs working in Corrections at the Tulare County Jail where Plaintiff was incarcerated.  The specific actions pending against these Defendants are: (1) a single Eighth Amendment excessive force claim against SANDOVAL only (ECF 20, p. 6), and (2) an Eighth Amendment deliberate indifference claim against SANDOVAL, SMITH and THOMPSON (ECF 20, p. 7) (O'Neil was dismissed from this action by the Court on or about July 11, 2017-ECF 72).

Plaintiff filed the instant Motion to Compel on January 9, 2017 (ECF No. 60).  Defendants have timely provided all responses and discoverable items in their possession to Plaintiff.  Therefore Plaintiff's Motion to Compel will produce no new information. Pursuant to this Court's July 17, 2017 Order, Defendants respond to Plaintiff's Motion to Compel below. (ECF No. 73).

### II.   FACTUAL BACKGROUND

The present action arises out of an incident that occurred on August 28, 2014 while Plaintiff was an inmate in the custody of the Tulare County Jail. Defendants THOMPSON, SANDOVAL and SMITH were Deputy Sheriffs working in Corrections assigned to the Tulare County Jail. Plaintiff initiated this action by filing his Complaint on January 26, 2015. (ECF No. 1.)  On July 17, 2015 Plaintiff filed a motion seeking a 20 day extension of time to file an amended complaint, which was granted on July 27, 2015. (ECF Nos. 16 and 17.)  In his First Amended Complaint (ECF No. 18), filed August 31, 2015, Plaintiff describes events that occurred during the incident involving the Defendants and alleged claims of excessive force against the Defendants in their individual and official capacities under the Eighth and Fourteenth Amendments. He also sought forms of injunctive

County Counsel
Tulare County
Visalia, California

1:15-CV-00129-SAB(PC)

and declaratory relief.  However, **the January 26, 2016 Screening Order reduced the cognizable claims to (1) a single Eighth Amendment excessive force claim against SANDOVAL; and (2) an Eighth Amendment deliberate indifference claim against SMITH, SANDOVAL and THOMPSON.** (ECF No. 20.)

This Court previously entered a Discovery and Scheduling order setting the deadline for Initial Disclosures as July 28, 2016, Deadline to Amend Pleadings as October 11, 2016 and Discovery Cut-Off for November 10, 2016. (ECF No. 36.) The Order clearly advised that these deadlines are firm and will not be extended by the Court except upon a showing of good cause. Defendants timely complied with the Initial Disclosure requirement. However, on July 25, 2016, Plaintiff filed a motion to Modify the Discovery and Scheduling Order requesting a sixty-day time extension of the initial disclosure deadline of July 28, 2016. (ECF No. 44.)  Defendant's timely complied; Plaintiff was granted a thirty-day extension in which to comply with the initial disclosure requirement. (ECF No. 45.)  Defendants have informally requested Plaintiff provide his mandatory Initial Disclosures on more than one occasion (see correspondence attached as Exhibit 4 (pg. 2) to Plaintiff's instant Motion).  As of the time of this Opposition, *nearly a full year later* (July 18, 2017) **Plaintiff has failed to provide his initial disclosures** as required.

On **October 3, 2016** Plaintiff propounded his Requests for Admission to Defendants, and on **October 10, 2016** propounded his Request for Production of Documents and Interrogatories to Defendants.  On October 11, 2016 Plaintiff filed a second Motion for a sixty-day Extension of Time to "meet the Deadline to Amend Pleadings on or before the due date herein of October 11, 2016" (request for extension made on the deadline).  Defendants intended to oppose Plaintiff's October 11, 2016 request for additional time, however this Court granted Plaintiff's request **two days later** on October 13, 2016.

On October 24, 2016, Defendants notified Plaintiff by letter that responses to his Requests

for Admission would be forthcoming as they were served within the time constraints of the Court's Scheduling Order; however, Defendants would *not* be responding to his Request for Production of Documents, nor the Interrogatories because they were not timely served. (See Exhibit 4 of Plaintiff's instant motion). On October 31, 2016, Plaintiff filed a motion to extend the discovery deadline and a motion to extend the discovery cut-off, both of which this Court granted on November 29, 2016. (ECF Nos. 44, 45, 51 and 54.) In light of the Court's Orders, Defendants immediately prepared and served responses to Plaintiff's October 10th Requests for Production of Documents and Interrogatories (sent December 5th; see Exhibits 2 and 3 to Plaintiff's instant Motion).

On November 30, 2016, Plaintiff filed a Motion seeking Leave to File an Amended Complaint. Defendants filed an Opposition to Plaintiff's request the very next day, December 1, 2016. (ECF Nos. 56 and 58).

Plaintiff sought a ***fourth*** extension of time in this matter, this time for additional time in which to file a motion to compel requesting the date be extended to January 3, 2017. (ECF No. 61). On July 17, 2017, this Court found that Plaintiff's Motion for Extension was unnecessary as the deadline to file was January 3, 2017, a deadline met by Plaintiff. (ECF No. 73). Plaintiff filed the instant Motion to Compel concurrently on January 9, 2017 (ECF No. 60). Pursuant to this Court's July 17, 2017 Order, Defendants now respond to Plaintiff's Motion to Compel. (ECF No. 73).

In his Motion to Compel, Plaintiff seeks "pursuant to Rule 34(b) and 37(a) of the Fed. R. Civ. P. for an order compelling the defendants" (1) "to produce all of the documents requested on October 10, 2016"; (2) "an order issuing that all the evasive, ignored, and/or meritless denials/responses be deemed as 'admitted' in the admissions submitted on October 3, 2016"; and (3) "an order issuing the waiving of all objections, pursuant to Rule 33(b) of the Fed.R.C.P., to the interrogatories submitted on October 10, 2016."

It is important to note that until this Court's July 26, 2017 Order there were only ***two*** claims

at issue in this case: (1) an 8th Amendment use of force allegation against Defendant SANDOVAL, and (2) an 8th Amendment Deliberate Indifference claim against Defendants THOMPSON, SMITH and SANDOVAL.  At the time of the discovery demands and responses at issue, only Defendants THOMPSON and SMITH had been served.  Therefore, only Defendants THOMPSON and SMITH responded to the discovery propounded by Plaintiff.  That means ***the only claim at issue in the discovery demands is Plaintiff's 8th Amendment claim of Deliberate Indifference against SMITH and THOMPSON.***

### III. <u>LAW AND ARGUMENT</u>

**A.  Legal Standards Governing a Motion to Compel**

"The discovery process is subject to the overriding limitation of good faith." *Zavala v. Rios*, 2015 WL 1236172, at *3 (E.D.Cal. March 17, 2015) (quoting *Asea v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1246 (9th Cir.1981)). "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." *Id.* (quoting Fed.R.Civ.P. 26(b)(1)).

A party propounding discovery may seek an order compelling disclosure when an opposing party has failed to respond or has provided evasive or incomplete responses. Fed.R.Civ.P. 37(a)(3)(B). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." *K'napp v. Adams,* 2014 WL 950353, at *5 (E.D.Cal. March 11, 2014) (quoting Fed.R.Civ.P. 37(a)(4)).

Generally, if the responding party objects to a discovery request, the party moving to compel bears the burden of demonstrating why the objections are not justified. *Zavala v. Rios*, 2015 WL 1236172, at *3 (E.D.Cal. March 17, 2015) (citing *Grabek v. Dickinson*, 2012 WL 113799, at *1 (E.D.Cal. Jan.13, 2012); *Ellis v. Cambra*, 2008 WL 860523, at *4 (E.D.Cal. Mar.27, 2008)). The moving party "at a minimum ... has the burden of informing the court which discovery requests are the subject of his motion to compel, which of the ... responses are disputed, why ... [the] responses

are deficient, why the ... objections are not justified, and why the information he seeks through discovery is relevant ..." *Id.* (quoting *Walker v. Karelas*, 2009 WL 3075575, at *1 (E.D.Cal. Sep.21, 2009).

Plaintiff bears the burden of informing the Court of the basis for his motion to compel. "It is not sufficient to offer a general argument that Defendant's response was evasive and incomplete without elaborating on how each response was evasive or incomplete. Plaintiff must address each interrogatory individually and demonstrate why Defendant's objections are unjustified. Plaintiff must demonstrate, for each interrogatory, how Defendant's responses were evasive or incomplete, or how information responsive to that interrogatory is clearly from sources within Defendant's control." *Williams v. Woodford*, 2010 WL 2490951, at *1, (E.D.Cal. June 16, 2010).  Defendants address each of Plaintiff's claims below.

**B.  Plaintiff's Request for Admissions**

Plaintiff claims under his heading of "Point I: Rule 36 of the Federal Rules of Civil Procedure" that he "has determined that admissions request number(s) 2, 3, 4, 5, 13, 15, 17, and 18 are insufficient."  Plaintiff's specific claims are addressed below in the same format as raised in his motion for sake of convenience and clarity.

**a)**       Plaintiff's claim that Defendants completely ignored Plaintiff's "DEFINITIONS" in his Request for Admissions (RFA) (Plaintiff's Exhibit 1).

***Defendants' Response***: Plaintiff's RFA "DEFINITIONS" begin at the bottom of page 1 with this statement: "Unless otherwise indicated the following definitions and terms shall apply to these Request for *Production of Documents*:" (See Plaintiff's Exhibit 1). Presuming Plaintiff actually intended his "DEFINITIONS" to apply to his Request for Admissions rather than his Request for Production of Documents as stated, Plaintiff's "DEFINITIONS" were not "completely ignored" by Defendants.  The eight terms Plaintiff subsequently defined are (1) " 'you' and 'your' refer to

defendants and anyone purporting to act on their behalf, including but not limited to their attorneys, assistants, advisors, investigators, employees, experts, consultants or custodians of records"; (2) "documents" or "document"; (3) "TCSD"; (4) "Detentions Division"; (5) "relate to"; (6) "all"; (7) "any"; and (8) "complaint." Plaintiff fails to allege which of these eight definitions Defendants THOMPSON and SMITH ignored or how he was harmed by such. (See Defendant's Responses to RFA's at Plaintiff's Exhibit 1a.)

Plaintiff's RFA's were not propounded to individual defendants but to "All Defendants." Answering Defendants narrowed "you" and "your" to mean THOMPSON and SMITH *only* in the spirit of full and efficient discovery, rather than on evasion and word play (at that time two of the four Defendants had not been served with the Summons and Complaint).

**b)**     Plaintiff's claim that RFA numbers "2, 3, 4, and 5 use clearly defined Tulare County Sheriff's Department Detention Division Procedures Manual terminology, however defendants claimed to not know these terms and their defining source when it supported their deceitful agenda of concealment-they knew the term and it's source in #2 but not in 3, 4, and 5 – but failed to thoroughly inquire into them as well. The rule governing request for admissions requires the responding party to make a reasonable inquiry and effort to secure information that is readily available from person and documents within the Responding Party's relative control.  See defendants deceitful stonewalling in Exhibit 1a."

***Defendants' Response:*** Once again, in the spirit of full and efficient discovery rather than on evasion and word play, Answering Defendants made every effort to provide full and complete answers by narrowing and/or defining terms undefined by Plaintiff when possible. While a responding party may be required to make a "reasonable" inquiry and effort to secure information, a responding party is not required to guess at the intended meaning of Plaintiff's undefined terms. Answering Defendants searched the Tulare County Sheriff's Department Division Procedures

Manual in effect at the time of the alleged incident for each of Plaintiff's undefined terms.  Where terms were found and defined, Defendants defined the term and answered; where terms were not found, Defendants were not obligated to guess at Plaintiff's intended meaning.

"When responding to requests for admissions, explanation generally is unnecessary. 'The answer [to a request for admission] shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter.' " *Safeco of America v. Rawstron*, 181 F.R.D. 441, 447 (C.D.Cal. May 18, 1998) (quoting Fed.R.Civ.P. 36(a)). "Each request for an admission should be phrased simply and directly so that it can be admitted or denied without explanation." *Id.* (quoting 8A Wright, Miller & Marcus § 2258 at 546–547; *see United Coal Companies v. Powell Construction Co.,* 839 F.2d 958, 968 (3d Cir.1988) ("Rule 36 should not be used unless the statement of facts sought to be admitted is phrased so that it can be admitted or denied without explanation."). "Explanation is only required if the party cannot truthfully admit or deny." *Id.*

Further Plaintiffs RFAs 2, 3, 4 and 5 seek admissions to establish facts not relevant to any party's claims or defenses.  Each one of those RFAs seeks admissions that the "inmate's refusal to handcuff through the cell's door food port" was either "unusual", an "incident", a "disturbance", an "emergency", "mutual combat"; however, ***Plaintiff does not claim he refused to handcuff through the cell's door food port;*** rather, Plaintiff specifically states in his Complaint that he refused to pull his hands back into his food port door after the handcuffs were removed.  It appears Plaintiff confused the facts of this case with the facts of his second case previously before this Court and referenced in his Complaint (1:14-CV-02039).  ***More importantly*** whether Plaintiff was handcuffed or not, "an inmate's refusal to handcuff through the cell's door food port" has ***absolutely nothing*** to do with the single claim against THOMPSON and SMITH; deliberate indifference to Plaintiff's serious medical need.

"Each of Plaintiff's requests must relate to a specific fact, the application of law to fact, or opinions about either, or the genuineness of any described document…Plaintiff's requests may only concern matters relevant to the two claims upon which this action now proceeds, and Plaintiff must be specific in his descriptions of persons, places, times, events, versions of documents, etc., without ambiguity. Requests should pertain to the individual Defendant who is asked to respond and should not be unreasonably duplicative or cumulative." *K'napp v. Adams,* 2014 WL 950353, at *9 (E.D.Cal. March 11, 2014).

To succeed on his remaining claim against SMITH and THOMPSON, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing *Jett*, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096).  Plaintiff provides no explanation as to how this request relates to the claim of deliberate indifference against these Defendants.

**c)**      Plaintiff's claim that RFA numbers "13, 15, 17, and 18 are clear in their wording, however, the responding defendants gave evasive ambiguous responses that fail to answer the actual requested admission (i.e. "…were you involved…" was plaintiff's wording and/but defendants responded with "…[they] deny…they used…." In #13 of admissions; thus, not factually responding to the actual admission request.  Defendants responses to 15, 17, and 18 are similar to 13 with their evasive ambiguous deceit). Callous disregard of discovery responsibilities cannot be condoned. Making an evasive or meritless denial clearly would result in the matter[s] being deemed admitted."

***Defendants' Response:***  Each of these RFAs were answered by Defendants.  After narrowing

"you" to mean the two Answering Defendants, answers were provided and the word "they" was used in reference to Answering Defendants where appropriate.  RFAs 13, 15, and 17 do not relate to Plaintiff's claim of deliberate indifference against THOMPSON and SMITH, therefore he cannot show he was harmed by what he claims are "evasive" and "ambiguous" responses.

Full and complete answers were provided to all twenty-eight of Plaintiff's RFAs.  Plaintiff's election to resort to the use of unfounded and untrue allegations of deceitfulness on the part of Defendants is distasteful.  Further, his statement that "callous disregard of discovery responsibilities cannot be condoned" is absurd in light of the fact he has yet to produce even his Initial Disclosures that are now a year overdue. Discovery in this case has been a one-way street since the initiation of this case in January 2015.

### C. Plaintiff's Request for Production of Documents

Plaintiff claims under his heading "Point II: Defendants have waived their objections by their failure to respond timely to the request" that Answering Defendants' responses and objections to his Request for Production of Documents were to be served within 30 days of the request unless the court grants a shorter or longer time. He further states that the Responding Defendants "waited almost two months before supposedly responding, without even obtaining or even seeking permission from the court, or agreement from the plaintiff, for this delay."

As outlined above in the Factual Background, Plaintiff signed and mailed his Request for Production of Documents and Interrogatories on October 10, 2016.  Defendants notified Plaintiff by letter dated October 24th that Defendants THOMPSON and SMITH would *not* be responding to his Request for Production of Documents (RFPDs), nor the Interrogatories because they were not timely served pursuant to the Court's Scheduling Order. (See Exhibit 4 of Plaintiff's instant motion).  On October 31st Plaintiff filed a motion to extend the discovery deadline and a motion to extend the discovery cut-off, both of which were granted on November 29th. In light of the Court's Orders,

Defendants THOMPSON and SMITH immediately prepared and served responses to Plaintiff's October 10th RFPDs and Interrogatories (sent December 5th; see Exhibits 2 and 3 to Plaintiff's instant Motion).

Under his heading "Point III: the discovery sought is relevant to the claims and defenses in this case" Plaintiff claims generally that Defendants' objections to his RFPDs are meritless and frivolous.

a)       Plaintiff claims Defendants used their new signature "obscure-the-request tactic", questioned his clear request, and then basically failed/refused to respond to his request number 2 which asks for "…any and all incident packages generated by TCSD relating to all interactions with Plaintiff on or about INCIDENTS giving rise to the COMPLAINT. This document request includes but is not limited to…all Supervisor Report Critiques… (see Exhibit 2a)."

**Defendants' Response**:  This request seeks documents that do not have any relation to Plaintiff's claim of deliberate indifference against Defendants SMITH and THOMPSON.  Further, it improperly seeks non-party discovery and is extremely overbroad. Plaintiff fails to comply with Rule 34's requirement to "describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P 34(b)(1)(A).

Without more specific guidelines, it is impossible for Defendants to determine which of the documents in their control (if any) Plaintiff expects them to produce, or to know when they have completed searching for documents in response to the request. Plaintiff's RFPD 2 seeks "any and all incident packages generated by TCSD relating to all interactions with Plaintiff on or about INCIDENTS giving rise to the COMPLAINT.  This document request includes (i.e. Sgt. Thompson, Deputy Alvarez, Lieutenant Stelow, etc) but is not limited to the Crime/Incident Report Review Notices, Facility Commander Reviews, Sergeant/Shift Supervisor Report(s), Patrol Lieutenant Use of Force Compliance Report(s), Use of Force Reports, all Supervisor Report Critiques of Use of

Force Incident Report(s)."  Clearly Plaintiff's request does not set reasonable boundaries, nor does it seek documents relevant to his claim of deliberate indifference.

   **b)**      Plaintiffs claim that "Defendants continued to be ambiguous, deceitful, and/or evasive in all of their documents request responses. Out of 12 request[s] from plaintiff the defendants evaded 11 of them (POD request 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12) by obscuring the request then being ambiguous, deceitful, and/or partial in their response."

   ***Defendants' Response***:  Plaintiff's general claim here lumping together eleven RFPDs is so broad that Defendants cannot meaningfully respond.

   **c)**      Addressing RFPD 3, Plaintiff states he asked the Responding Defendants to produce "…jail video surveillance footage…depicting the times and places of the INCIDENTS…; [that] defendants object, then claim not to know of any such footage, and claim policy preventing obtainment of any such footage.  However, the response fails to properly cite and produce the policy document(s) that conveniently destroyed the requested footage. Moreso, defendants failed to describe why they failed to adhere to TCSO Policy Manual section 300.7(c)(3), (d) and keep the …[footage] retained until all potential for civil litigation has expired; expressly respondents fail to produce who destroyed the footage, and when.  Rule 34(b) 'if objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts.' PLAINTIFF NOW MOVES FOR AN ORDER UNDER RULE 37(a)(3)…"

   ***Defendants' Response***:  As stated in Defendants' Response to Request No. 3, Answering Defendants are unaware of the existence of any video surveillance of the Incident, as video surveillance is stored for a one-year period per policy and the Incident that is the basis for Plaintiff's Complaint occurred in August of 2014; Defendants did not receive notice of this action or Plaintiff's intent to file such until being served with the Summons and Complaint in April of 2016.  Defendants cannot produce what they do not possess.  Plaintiff then cites one of the very policy sections he

claims we failed to provide to him; specifically section 300(c)(3) and (d).  His chosen quotation of the section evidences an attempt to mislead the Court.  The Use of Force Policy section 300(c) speaks only of preserving any recorded interview with the subject(s) upon which force was applied; nothing in this section speaks to jail surveillance video.

> "(c) Separately obtain a recorded interview with the subject(s) upon whom force was applied. If this interview is conducted without the person having voluntarily waived his/her Miranda rights, the following shall apply:
>
>> 1. The content of the interview should not be summarized or included in any related criminal charges.
>>
>> 2. The fact that a recorded interview was conducted should be documented in a property or other report.
>>
>> 3. The recording of the interview should be distinctly marked for retention until all potential for civil litigation has expired.
>
> (d) Once any initial medical assessment or first aid has been completed, ensure that photographs have been taken of any areas involving visible injury or complaint of pain as well as overall photographs of uninjured areas. These photographs should also be retained until all potential civil litigation has expired."

Defendants are unaware of the existence of any such video as described above, or any video whatsoever; Defendants provided all photographs related to the alleged Incident at the time of our Initial Disclosures.

**d)**      Plaintiff's claim that RFPDs 4, 5, and 6 ask for "specific training records in all their parts (i.e. the documents reviewed, who issued them, when, where, how, etc.) but respondents submitted only dates and results, thus obstructing the plaintiff's discovery efforts. Respondents objections are general, boilerplate, and fail to explain the confidentiality claimed.  Therefore, respondents should be waived RULE 26(b)(1), FRCP, 'the parties may obtain discovery regarding

any matter not privileged.' "

*Defendants' Response*:  Plaintiff's RFPD Nos. 4-6 seek "any and all" records of training provided to each defendant, for the duration of their employment on (1) use of force; (2) cell extractions; and (3) emergency medical and mental health evacuation procedures.  While there is *no relevancy* in *any* of these requested records, as use of force, cell extractions and evacuation procedures have nothing to do with Plaintiff's deliberate indifference claim, Defendants SMITH and THOMPSON still provided Individual Training Records as responsive documents to this request. The Individual Training Records detailed the name and date of every training course completed by SMITH and THOMPSON for the duration of their employ with the Tulare County Sheriff's Department. THOMPSON's records date back to 1988, and SMITH's to 2008.

e)   Here, Plaintiff states that "Respondents claim to have previously produced the documents requested in [Nos.] 7, 8, 9.  However, the respondents never produced these documents at no point and time in this litigation. (see Ex. 2a)"

*Defendants' Response*:  Upon review of documents provided to Plaintiff in Defendants Initial Disclosures, Supplemental Disclosures, and Responses to Plaintiff's Request for Production of Documents, it appears as though Defendants confused the instant case with Plaintiff's concurrent case, referenced in Plaintiff's Complaint and resolved by this Court, 1:14-cv-02039-SAB(PC).  The requested records were produced in that case on April 20, 2016 and May 19, 2016.

While Plaintiff *actually had possession of the documents requested at the time he completed his Request for Production of Documents* (RFPD dated October 10, 2016), and while Defendants objections remain, including the objection of relevancy to support his claim of deliberate indifference, Defendants' do not contend that excuses the need to produce the relevant policies in this case. Defendants did not become aware of this mistake until preparing the instant Response to Plaintiff's Motion to Compel.  Upon learning of the error, Defendants immediately supplemented

1  their Disclosures and provided Plaintiff with Tulare County Detention Services Use of Force and

2  Medical Treatment Policies. However, because Plaintiff already possessed the documents sought,

3  Defendants' contend that he did not suffer prejudice from the delayed production of these records.

4      **f)**      Plaintiff's claim that RFPDs 10, 11, and 12 "received evasive, ambiguous, and

5  insufficient responses […] from defendants. Plaintiff's request seeks any and all formal and informal

6  documents, allegations, and/or written complaints related to different elements of use of force

7  involving the respondents and/or, but not limited to, even recording their presence.  Defendants

8  responding object, claim no relevant requested time period – although that's a lie because that's the

9  last sentence in those request – along with other non-standard meeting generalized excuses why they

10  didn't produce the requested documents; Plaintiff does not seek these records in a general way.

11      …Plaintiff seeks documents pertaining to particular kinds of events, conduct, complaints,

12  and/or allegations about these defendants. This evidence may also support the claim against the

13  respondents themselves. Rule 404(b) [FRCP] provides, 'evidence of other crimes, wrongs, or acts is

14  not admissible to prove the character of a person in order to show that he acted in conformity

15  therewith.  It may, however be admissible for other purposes, such as proof of motive, opportunity,

16  intent, preparation, plan, knowledge, identity, or absence of mistake or accident.' Respondents

17  evading duty to produce these request under the pretext that TCSD possess each records/documents

18  is frivolous.  Actual possession, custody or control is not required. 'A party may be ordered to

19  produce a document in the possession of a non-party entity if that party has a legal right to obtain the

20  document…' "

21      ***Defendants' Response***:  Plaintiff's Requests are unquestionably overbroad. Plaintiff fails to

22  comply with Rule 34's requirement to "describe with reasonable particularity each item or category

23  of items to be inspected." Fed. R. Civ. P 34(b)(1)(A). Without more specific guidelines, it is

24  impossible for Defendants to determine which of the documents in their control (if any) Plaintiff

expects them to produce, or to know when they have completed searching for documents in response to the requests. Plaintiff's requests for "any and all documents" related to particular allegations or affirmative defenses do not set reasonable boundaries.

After stating that the documents Plaintiff seeks, i.e. "evidence of other crimes, wrongs, or acts" are "not admissible to prove the character of a person in order to show that he acted in conformity therewith", Plaintiff states, "[i]t may, however be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Plaintiff provides no further information or explanation as to how the documents he seeks, if any exist, *may* be relevant and for what purpose.  There are only *two* claims at issue: (1) an 8th Amendment use of force allegation against Defendant SANDOVAL, and (2) an 8th Amendment Deliberate Indifference claim against Defendants THOMPSON, SMITH and SANDOVAL.  Plaintiff improperly attempts to shift the burden in bringing a Motion to Compel from himself to Defendants throughout its pages.

RFPD 10 seeks "[a]ny and all documents relating to allegations of excessive use of force by any TCSD staff in cell extractions or emergency medical and/or mental health evacuations while any of the defendants were present."  First, Plaintiff fails to define what an "emergency medical and/or mental health evacuation" is.  Further, he seeks documents that are not relevant to his single claim of deliberate indifference against answering defendants SMITH and THOMPSON.

RFPD 11 seeks "[a]ny and all formal or informal written complaints (including but not limited to administrative Grievance forms) against any defendant, including but not limited to those alleging excessive use of force that occurred in or out of TCSD Detention Division (including all written responses, appeals, reports, investigations, and/or correspondence regarding complaint). The time frame for this discovery request is the time each defendant became employed by TCSD to the present."  Again, the request is unquestionably overbroad and seeks information not relevant to

Plaintiff's claim against defendants SMITH and THOMPSON.

Finally, RFPD 12 seeks "[a]ny and all formal or informal written complaints (including but not limited to administrative Grievance forms) against any TCSD Deputy and/or staff, including but not limited to those alleging use of force, that happen to so much as even mention the "presence" of any defendant (including all written responses, appeals, reports, investigations, and/or correspondence regarding complaints). The time frame for this discovery request is the time each defendant became employed by TCSD to the present." Again, the request is indisputably overbroad and seeks information not relevant to Plaintiff's claim of deliberate indifference against defendants SMITH and THOMPSON.

Plaintiff has not shown that the requested documents are likely to lead to the discovery of admissible evidence. *Zavala v. Rios*, 2015 WL 1236172, at *5 (E.D.Cal. March 17, 2015) (citing *Valenzuela v. Smith,* 2006 U.S. Dist. LEXIS 6078, *5–6 (E.D.Cal. Feb. 15, 2006) (request for all complaints and investigations against defendants to prove a pattern of medical indifference denied as overbroad and burdensome and for failure to show likelihood of leading to discoverable evidence)). The fact other complaints may have been made against Defendant is not relevant to the issue of whether Plaintiff's complaints in this case are justified. *Id.* (citing Fed.R.Evid. 404(a)(1)).

Here, Plaintiff has failed to demonstrate how Defendants SMITH and THOMPSON's objections to his production requests were unjustified. Plaintiff does not address each production request individually and does not explain why Defendant's objections to each request were unjustified. Plaintiff provides only a blanket assertions and provides no evidence to support them. He does not identify any specific documents alleged to be in Defendants' possession. Plaintiff has failed to identify what the documents are, establish that they even exist, and has offered nothing that shows that the various documents are allegedly in Defendant's possession, custody, or control.

///

**D. Plaintiff's First Set of Interrogatories**

Addressing now Plaintiff claims under his heading: "Point IIII: Untimely, incomplete, generalized interrogatories objections/responses will not suffice."  Here Plaintiff makes the same claims regarding the alleged untimeliness of Defendants' responses to his Interrogatories. Defendants' position on this claim is discussed above under Section C "Request for Production of Documents" at page 9, line 13.  While Plaintiff "moves the court to waive and impose sanctions authorizing to direct factual findings on ultimate fact issues", Plaintiff in fact received the discovery responses and does not claim he was prejudiced by any delay.

**a)**     Here, Plaintiff states that Interrogatory No. 1 asks for specific history and that "Respondents restructured plaintiff's request an[d] issued an irrelevant response; respondents deliberately obstructed plaintiff's discovery efforts (see Ex. 3a)."

***Defendant's Response***:  Plaintiff's Interrogatory No. 1 requests Defendants "state all the positions you have held in the TCSD and its Detentions Division."  Answering Defendants SMITH and THOMPSON limited the response to that of these Answering Defendants and narrowed the time frame to the relevant time period, i.e., the positions held by SMITH and THOMPSON at the time of the alleged Incident that is the basis of Plaintiff's Complaint.  Defendants do not agree that this equals an "irrelevant response…deliberately obstructing Plaintiff's discovery efforts."  Rather, it is Plaintiff that continues to attempt to request discovery outside of the relevant time period and relevant to his claim of deliberate indifference.

**b)**     Plaintiff claims his Interrogatory No. 3 asks for a "specific description. The respondents mislead in their response because the incident report does not describe what the interrogator[y] request (see incident report in 'EXHIBIT 1' attached to admissions request)."

***Defendant's Response***:  Interrogatory No. 3 requests Defendants "[g]ive a detailed description of the INCIDENT, including your reason for the manner in which you chose to remove

inmate Vickers' arm from the trap-door, along with describing what inmate Vickers was doing (i.e. behavior, physical demeanor, etc.) the entire duration of the INCIDENT."  Here, Answering Defendants SMITH and THOMPSON both reviewed the Incident Report prepared at or near the time of the Incident, provided that report to Plaintiff and answered that it accurately describes the Incident and Vickers' behavior throughout.  Answering Defendants have no additional information to provide.

      **c)**      Plaintiff's claim that Interrogatory No. 4 is "not in accordance with the request, thus making the response insufficient after some meritless generalized objections."

      ***Defendant's Response***:  Interrogatory No. 4 asks, "Did you make any efforts to use as little force as necessary the entire duration of the INCI[D]ENT?  If your answer is anything other than an unqualified "No", then please describe in detail the efforts you made and the order in which you made these efforts."  Answering Defendants narrowed "you" to mean SMITH and THOMPSON and answered that only necessary and *minimal* force was used, which directly responds to Plaintiff's request.

      **d)**      Plaintiff's claim that Interrogatory No. 5 is a "clear concise question asking for a direct response, but defendants responding purposefully mislead. The incident report has no mention of an assess threat level."

      ***Defendant's Response***:  Answering Defendants again narrowed "you" to mean SMITH and THOMPSON.  SMITH and THOMPSON both reviewed the Incident Report prepared at or near the time of the Incident, provided that report to Plaintiff and answered that it accurately describes the Incident and Vickers' behavior throughout.  Answering Defendants have no additional information to provide. Plaintiff fails to address how "assessing his threat level" speaks to his single cause of action against THOMPSON and SMITH for deliberate indifference.

      **e)**      Plaintiff's claim that Interrogatory Nos. 6, 7, and 8 "continue with this illegal

obstruction of ambiguous, misleading, boilerplate objections; leaving the interrogatories basically unanswered.  No policy was ever issued as #6 response suggest.  #7 response is also deceitful, 'facility commander' is a Tulare County Sheriff's Department Detentions Division term often mention throughout their policy manual(s)."

   ***Defendant's Response***:  Once again, in the spirit of full and efficient discovery, Answering Defendants made every effort to provide full and complete answers by narrowing and/or defining terms undefined by Plaintiff when possible. While a responding party may be required to make a "reasonable" inquiry and effort to secure information, a responding party is not required to guess at the intended meaning of Plaintiff's undefined terms. Plaintiff had the responsibility of defining his terms, or at the very least stating "as defined in the Tulare County Sheriff's Detention Manual"; however, he did neither. Nonetheless, Answering Defendants searched the Tulare County Sheriff's Department Division Procedures Manual in effect at the time of the alleged incident for each of Plaintiff's undefined terms.  Where terms were found and defined, Defendants defined the term and answered accordingly; where terms were not found, Defendants were not obligated to guess at Plaintiff's intended meaning.

   SMITH and THOMPSON answered Interrogatory No. 6 and No. 8; however, Interrogatory No. 7 asks, "Before you opened the door at the time of the INCIDENT, intending to remove the Plaintiff's arm from the trap-door, why didn't you notify the facility commander of inmate Vickers' refusal to comply first?" After narrowing "you" to Answering Defendants, SMITH and THOMPSON objected to Plaintiff's use of his undefined term "facility commander." Defendants further answered that the Incident Report accurately describes the Incident.  The Incident Report identifies all personnel called to assist, who called for assistance, the titles of those called, and the times they were called.

   **f)**   Plaintiff's claim that Interrogatory No. 9 is "further proof how respondents used

general objections but failed to carry it's burden of showing facts justifying it's objections to the interrogatories which sough determinate information."

*Defendant's Response*:  Plaintiff misunderstands his burden in bringing a motion to compel. Plaintiff—not Defendant—carries the initial burden of providing to the Court why Defendant's objection is deficient and not justified. *Zavala v. Rios*, 2015 WL 1236172, at *10 (E.D.Cal. March 17, 2015). Plaintiff has not met this threshold burden for any of these interrogatories.

Plaintiff's Interrogatory No. 9 asks Responding Defendants to "Describe in detail (i.e. date(s), location(s), sequence of methods used, and persons present and persons involved) every incident you have been involved in where videotaping equipment, safety equipment (including but not limited to protection suits, shields, knee and elbow pads, and leg restraints) were in use during the entrance of staff into an administratively segregated high risk inmate's cell."

This request is extremely overbroad and seeks documents that do not have any relation to Plaintiff's single claim of deliberate indifference against Defendants SMITH and THOMPSON. Without more specific guidelines, it is impossible for Defendants to provide an intelligent response. Defendants provided the Incident Report detailing all aspects of the Incident that is the basis of Plaintiff's Complaint and do not possess any other responsive documents relating to that Incident.

**g)**      Plaintiff's claim that Interrogatory No. 11 is "a direct question that received an insufficient objection, rendering #11 unanswered."

*Defendant's Response*:  Interrogatory No. 11 asks, "[a]t any point during the INCIDENTS, did you shout at or speak to the Plaintiff?  If so, what did you say during each part of your verbal communication; indicate whether or not you were shouting, threatening or cursing."  Again, outside of the Incident Report provided, Defendants have no responsive documents relating the Incident that is the basis of Plaintiff's Complaint. Further, verbal communication, including "shouting, threatening or cursing" is not relevant to Plaintiff's claim of deliberate indifference against the

Answering Defendants, nor is it relevant to his Excessive Use of Force claim against Defendant Sandoval.

**h)** Plaintiff's claim that "Identical obstructions – made by responding defendants – occur in the responses given to Interrogator[y] [Nos.] 13, 14, 15 and 16 (see 'EXHIBIT 3a'); the same Fed.R.Civ.P. and Fed.R.Evid. and the same cases cited govern and determine the insufficiency of those responses as well as my right to that discovery sought."

***Defendant's Response***: Interrogatories 13 through 16 seek entirely irrelevant information from Answering Defendants. No. 13 asks, "[w]ith respect to your ability to commit an assault and or excessive force please set forth your birthday, height, weight, general physical condition at the time of the INCIDENTS, any training that that you have ever had with respect to weight lifting, boxing, wrestling, karate, judo, jujitsu, aikido and any other form of physical fighting or combat training; set forth dates, level achieved, belt achieved (if any); sports or physical activities that you have engaged in within the past ten years; in all aforementioned activities set forth dates, tournaments that you have completed in and any awards or tournaments that you have won."

Interrogatory No. 14 asks, "Have you ever been accused of having any involvement in any violence, excessive use of force or assaultive conduct? If so, for each such incident state the specific accusation, the date of the cause for the accusation (i.e. the date the alleged incident was to have occurred on) any punishment or fine that you received and whether such punishment or fine came as the result of a plea, trial or an administrative disciplinary consequence. Indicate the subject venue (i.e. the court, business or entity) it's address, the case number or report number and the name of the person who issued the verdict." No. 15 inquires as to whether defendants have ever been "subject to any restraining orders or injunctive orders."

Finally, No. 16 seeks, "With respect to prior relevant conduct, other than the INCIDENTS which is the subject of this COMPLAINT have you engaged in any fights, assaults, use of force,

excessive use of force or physical alterations whatsoever within the preceding ten years?  If so, then for each such physical altercation and or incident; set forth its date, place, the names and addresses of all persons involved and a summary of the occurrence.  Indicate whether or not a police report or incident report was ever issued and if so, the name and address of the agency or police department involved to[g]ether with the report or case number."

These requests improperly lump several requests into one and are exceedingly overbroad and improper.  Further these requests seek information that is not relevant to Plaintiff's claims against THOMPSON and SMITH.  Plaintiff's "right to discovery" does not extend to items irrelevant to his claims.  A party may only propound interrogatories "relat[ing] to any matter that may be inquired into under Rule 26(b)."  *Zavala v. Rios*, 2015 WL 1236172, at *8 (E.D.Cal. March 17, 2015) (quoting Fed.R.Civ.P. 33(a) (2)).

The fact that Plaintiff did not receive the answers or information he had hoped to find does not amount to prejudice from the denial of discovery.  Here, Plaintiff has failed to show how denial of his requests will *actually* cause him to suffer *substantial* prejudice.

**i)**      Plaintiff's claim that Interrogatory Nos. 18 and 19 "responses fail to state with specificity the exact manner in which responding defendants deem that information to grant them legal privilege."

*Defendant's Response*:  Without waiving their objections, SMITH and THOMPSON answered both of these Interrogatories with a "No."

## IV. CONCLUSION

Defendants have provided all discoverable materials in their position to Plaintiff; his Motion to Compel will produce no new information. The fact that Plaintiff did not receive the answers or information he hoped to find to support his claims does not amount to prejudice from the denial of discovery.

1    Plaintiff's lackadaisical approach to discovery and the Court's orders has been consistent

2    since the initiation of this action.  Plaintiff continues to ignore his obligation to produce discovery

3    entirely by deliberately disobeying this Court's order to produce even his Initial Disclosures.

4    In light of the foregoing, Defendants respectfully request that this Court deny Plaintiff's

5    Motion to Compel, and for such other relief as this Court deems just and proper.

6

7    Dated:  August 1, 2017                          DEANNE H. PETERSON

8                                                    Tulare County Counsel

9

10                                                   By _____/s/ *Amy I. Terrible*___

11                                                   Amy I. Terrible
                                                     Deputy County Counsel

12   AIT/1/10/2017/2016870

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28