# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMIAH D. VICKERS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>THOMPSON, et al.,<br><br>　　　　Defendants. | Case No.: 1:15-cv-00129-SAB (PC)<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br>(ECF No. 85)<br><br>ORDER PERMITTING DEFENDANTS TO FILE MOTION REQUESTING EVIDENTIARY HEARING<br><br>**THIRTY-DAY DEADLINE** |

　　　　Plaintiff Jeremiah D. Vickers is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. All parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Local Rule 302. (ECF Nos. 8, 40, 65, 89.)

　　　　Currently before the Court is a motion for summary judgment by Defendants Thompson, Smith, Sandoval, Jr., Akin, Williams, Alvarez, and Stelow, filed on October 3, 2017. (ECF No. 85.)

## I.

## RELEVANT BACKGROUND

　　　　This case has a lengthy procedural history, which the Court will briefly summarize. Plaintiff's claims arise out of use of force incidents in August 2014, when he was a convicted inmate housed at the Tulare County Jail while awaiting transfer to a California Department of

1

Corrections and Rehabilitation ("CDCR") facility. This action previously proceeded on Plaintiff's claims for excessive force against Defendants Smith and Sandoval, and deliberate indifference against Defendants Thompson, Smith and Sandoval, in violation of the Eighth Amendment. (ECF No. 18.) Following screening of the first amended complaint, delays and issues regarding service of process ensued. Eventually, Defendants Smith and Thompson filed an answer on June 9, 2016, and Defendant Sandoval filed an answer on May 11, 2017. (ECF Nos. 35, 64.)[1]

On June 10, 2016, the Court issued a discovery and scheduling order. (ECF No. 36.) Among other deadlines, that order set a deadline for amending pleadings of October 11, 2016. On October 11, 2016, Plaintiff filed a motion to extend that deadline. (ECF No. 49.) The Court granted Plaintiff's request and extended the deadline to December 11, 2016. (ECF No. 50.)

On November 30, 2016, Plaintiff filed a motion for leave to file a second amended complaint. (ECF No. 56.) On July 26, 2017, the Court granted the motion. (ECF No. 76.) The Court found that Plaintiff's second amended complaint stated a cognizable claim for excessive force against Deputy Akin, for the failure to intervene against Deputy Alvarez, and for deliberate indifference to a serious medical need against Deputy Akin, Deputy Alvarez, Lieutenant Stelow and Sergeant Williams, in violation of the Eighth Amendment, in addition to the cognizable claims noted above. Service of process on the additional defendants was then initiated. (ECF No. 79.)

Now this action proceeds on Plaintiff's second amended complaint alleging excessive force against Defendants Smith, Sandoval and Akin, the failure to intervene against Defendant Alvarez, and deliberate indifference against Defendants Thompson, Smith, Sandoval, Akin, Alvarez, Stelow, and Williams, all in violation of the Eighth Amendment. (ECF No. 75.) As noted above, on October 3, 2017, Defendants filed a motion for summary judgment. (ECF No.

---

[1] This case also proceeded on certain claims against Deputy O'Neil. As alluded to above, there were numerous motions, orders to show cause, orders to the United States Marshal, filings by the parties, rulings on requests for default, and multiple attempts at service in this case since the Court originally ordered all defendants in this matter to be served. Ultimately, Deputy O'Neil was dismissed from this action, without prejudice, for the failure to effect service of process, on July 11, 2017. (ECF No. 72.)

85.) Plaintiff sought to reopen discovery to oppose the motion for summary judgment and to stay the motion. (ECF Nos. 90, 91.) On January 10, 2018, the Court denied those motions, and required Plaintiff to file a response to Defendants' summary judgment motion within thirty (30) days. (ECF No. 93.)

Plaintiff filed an opposition to Defendants' summary judgment motion, on extension, on March 2, 2018. (ECF No. 95). Defendants filed a reply on March 8, 2018. (ECF No. 97.) The motion is now deemed submitted, without oral argument. Local Rule 230(l).

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

# III.

# DISCUSSION

### A. Parties Arguments

Defendants first argue that the Tulare County Jail had an inmate grievance policy and procedure that Plaintiff was aware of and utilized, but he did not file any grievance for this incident. Therefore, Defendants argue that this case must be dismissed for the failure to exhaust available administrative remedies. Defendants next argue that the undisputed evidence shows that there was a need to use force on Plaintiff to restore order and discipline, that minimal force was used, that Plaintiff had no significant injuries, and medical treatment was provided to Plaintiff within minutes of the incident. Thus, summary judgment should be granted in Defendants' favor.

In opposition, Plaintiff argues that he submitted a grievance to the next shift's tier deputy regarding the incidents forming the basis for his claim just after it happened, on August 28, 2014. Further, he argues that he has raised a genuine dispute of facts regarding the use of force incidents and the aftermath. Plaintiff asserts that the evidence he submits shows that the use of force was excessive under the circumstances, and that Defendants ignored his need for medical care after the incident.

Defendants argue in reply that Plaintiff has produced no evidence that he exhausted his administrative remedies, and therefore he has failed to raise a genuine dispute on that issue. Further, they argue that Plaintiff's own evidence supports that the force used on him was not excessive under the circumstances, and there was no deliberate indifference to his minimal injuries.

As it is a threshold issue, the Court first turns to Defendants' argument that summary judgment should be granted because Plaintiff failed to exhaust his administrative remedies.

### B. Exhaustion of Administrative Remedies

1. <u>Statutory Exhaustion Requirement</u>

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison

4

conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, — U.S. —, 136 S. Ct. 1850, 1862, 195 L. Ed. 2d 117 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.'"). Exhaustion is mandatory unless administrative remedies are unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows that he failed to exhaust. Id.

2. Description of Tulare County Grievance Process

The Tulare County Sheriff's Department Detention Division Procedure No. F-200, Inmate Grievances, sets out the Grievance Policy and Procedure that was in effect in August of 2014. (See Decl. of Denise Damari ("Damari Decl."), ECF No. 85-4, ¶¶ 5, 7-8 & Ex. A.) A grievance was defined as "[a] complaint by an inmate which involves any condition of confinement including but not limited to medical care, classification actions, lock downs, program participation, telephone, mail and visiting procedures and food, clothing and bedding." (Id.)

///

Under Step A of the applicable Grievance Procedure, the inmate must first attempt to resolve any grievance in an informal manner by discussing it with the Housing Officer. In the event the inmate's grievance is not resolved at Step A, the inmate may start the formal grievance procedure, under Step B, by requesting an inmate grievance form and filing it with the Shift Sergeant within five (5) days of any specific complaint. (Id.)

Once the Shift Sergeant receives the inmate grievance form under Step B, an investigation will be initiated into the grievance upon receipt of said grievance, submitted in the proper manner and through the proper chain of command. The inmate will be so informed of the investigative results. The decision and reasons for the decision shall be in writing on the inmate grievance form. If corrective action is taken, the person responding to the grievance shall include such information on the inmate grievance form. The investigation and response by the person responsible to respond shall be completed within seven (7) days. (Id.)

If the inmate is not satisfied with the decision of the responding person, the inmate may appeal to the Facility Manager, who shall review the entire proceedings under Step C. The appeal must be submitted to the Facility Manager within three (3) days of the adverse decision. The Facility Manager may consult with the Captain, Undersheriff and/or Sheriff to resolve the grievance. The Facility Manager shall return his/her decision and reason(s) for the decision in writing on the inmate grievance form within ten (10) days of the filing of the appeal with the Facility Manager as part of Step C. If corrective action is taken, the Facility Manager shall include such information on the inmate's grievance form. (Id.)

Finally, if an inmate is still dissatisfied with the outcome of the grievance, he/she may seek judicial review of the condition grieved, by bringing an appropriate legal action. (Id.)

3. <u>Analysis</u>

As an initial matter, there is no dispute that there was an administrative remedy system at the Tulare County Jail at the time of the events at issue, and that Plaintiff was aware of and had utilized the grievance process. <u>Albino</u>, 747 F.3d at 1172. Defendants present evidence that Plaintiff filed seven grievances between August 4, 2013 and July 15, 2014. (Damari Decl. ¶¶ 7, 9 & Ex. B.) The incidents at issue in this case began after those dates, during the evening of

August 27, 2014. (Damari Decl. ¶¶ 7, 10.) Plaintiff was released from the custody of Tulare County to the custody of CDCR not long after the incidents in question, on September 9, 2014. (Id.) According to Defendants, there is no record of Plaintiff filing any grievance that relates to the incident in this case at any time up through his transfer, or otherwise. (Id.)

Plaintiff argues that there is a genuine dispute of material fact precluding summary judgment here. Plaintiff asserts that he submitted a grievance regarding the incident forming the basis of his claim, within the required time frame and in the required format. In support, Plaintiff submits a declaration which states, in pertinent part, as follows:

> 42. The next shift floor Deputy, Deputy Abbot, walked past my door for his first tier check approximately 15 minutes later. I informed Deputy Abbot that I needed to see medical staff and talk to the shift Sergeant or Lieutenant about what occurred with the previous shift's deputies beating me and then just leaving me in pain to suffer, and I also explained the emotional distress I was feeling. Deputy Abbot claimed to not know what incident I was referring to and asked, "Why? What happened?" I then pointed to my swollen, cut lip and repeated that I'd been beaten by the previous shift's deputies and asked to see the nurse and about properly reporting the incident and my condition (i.e., physical).
>
> 43. Abbot responded that the nurse would be on the tier "later," in reference to routine pill pass. Deputy Abbot never called for nor informed the nurse about my situation.
>
> …
>
> 45. At some point, Abbot gave me a grievance form, after I'd asked on a previous walk of his. I promptly filled it out, stating all the facts on the incidents of the previous shift—but not in detail—and I returned it to Abbot. Abbot failed to issue me the "1st Level" receipt. A while afterward, I would never see Abbot again.

(Pl.'s Decl., ECF No. 95, ¶¶ 42-45 (errors in original).) Plaintiff also further declares that all or at least portions of the events that occurred should be visible from the jail's ceiling-mounted surveillance cameras, presumably including these exchanges between him and Deputy Abbot. (Id. at ¶ 46.) Finally, Plaintiff declares that after these incidents, he was re-housed in a different part of the jail and was never again spoken to about any aspect of these matters by anyone. (Id. at ¶ 48.)

///

7

"Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." Ross, 136 S. Ct. at 1858 (quoting 42 U.S.C. § 1997e(a)). When a prison official or administrator thwarts an inmate from taking advantage of a grievance process, such as through machination, misrepresentation, or intimidation, and prevents their use of otherwise proper procedures, this renders the administrative process unavailable. *Id*. (citing Davis v. Hernandez, 798 F.3d 290, 295 (5th Cir. 2015); Schultz v. Pugh, 728 F.3d 619, 620 (7th Cir. 2013); Pavey v. Conley, 663 F.3d 899, 906 (7th Cir. 2011); Tuckel v. Grover, 660 F.3d 1249, 1252-53 (10th Cir. 2011); Goebert v. Lee County, 510 F.3d 1312, 1323) (11th Cir. 2007). In this case, Plaintiff has presented evidence that he attempted to exhaust his administrative remedies about the events at issue here by submitting a grievance to Deputy Abbot on August 28, 2014. Whether due to some inadvertent loss of the grievance form, or for some other reason, Plaintiff contends that his complaint was not acted upon by prison officials, and he was thereby prevented from fully exhausting the grievance.

Defendants raise several arguments against Plaintiff's contentions here, including that the evidence shows that Plaintiff fully understood the grievance procedure at the jail, that he had enough time to properly file a formal grievance, and that Tulare County has timely responded to all of Plaintiff's other grievances submitted prior to this incident. Whether Plaintiff acted in an unusual manner here, why this incident was different from the other times that Plaintiff followed the grievance procedure, and why there is no record of Tulare County receiving and acting on this grievance, are all disputed matters that go to witness credibility. The inconsistencies and conflicts in the evidence, if any, affects whether Plaintiff should be believed that he attempted to exhaust his remedies, but was somehow prevented from doing so due to the circumstances. These issues of credibility and factual disputes may not be decided on summary judgment. See Williams v. Gore, No. 15-cv-654, 2017 WL 1354695 at *7 (S.D. Cal. 2017) (citing Coleman v. Brown, 938 F. Supp. 2d 955, 961–62 (E.D. Cal. 2013)) (resolving credibility determinations are normally accomplished through an evidentiary hearing).

///

Defendants also argue that Plaintiff offers no evidence to support his contention that he attempted to file a grievance at the jail to exhaust this claim. There is some explanation for that issue in Plaintiff's own declaration, in which he asserts that he gave the grievance form back to Deputy Abbot right away and was not issued any receipt. Further, Plaintiff has submitted sufficient evidence in support of his contentions, in the form of his declaration declaring facts under penalty of perjury, based on personal knowledge, that he could testify about and be examined upon. See Fed. R. Civ. P. 56(c)(4).

For these reasons, Defendants are not entitled to summary judgment on the grounds that Plaintiff failed to exhaust administrative remedies. An evidentiary hearing would be required to resolve the disputed issues of fact here. Therefore, the Court next turns to the parties' arguments regarding the merits of Plaintiff's claims.

### C. Excessive Force and Failure to Intervene

#### 1. Legal Standards

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citing Whitley v. Albers, 475 U.S. 312 (1986)). To determine whether a defendant's use of force was malicious and sadistic, the Hudson Court laid out five factors for courts to consider: (1) the extent of injury suffered by an inmate, (2) the need for application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7 (citing Whitley, 475 U.S. at 321). In weighing these factors, "[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard . . . the case should not go to the jury." See Whitley, 475 U.S. at 322.

A prison official may be liable under 42 U.S.C. § 1983 if he is aware that a fellow officer is violating a prisoner's constitutional rights but fails to intervene. Cunningham v. Gates, 229

F.3d 1271, 1289 (9th Cir. 2000) ("[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen."); see also Gaudreault v. Municipality of Salem, 923 F.2d, 203, 207 n. 3 (1st Cir. 1990) ("An officer who is present at the scene who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance."). The failure to intervene can support an excessive force claim where the bystander-officers had a realistic opportunity to intervene but failed to do so. Lolli v. County of Orange, 351 F.3d 410, 418 (9th Cir. 2003); Cunningham, 229 F.3d at 1289; Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

2. Analysis

Defendants argue that the force used on Plaintiff was not excessive under the circumstances. Plaintiff submitted a declaration in support of his opposition to Defendants' summary judgment motion, which is largely consistent with his verified second amended complaint. (Pl.'s Decl., ECF No. 95; Second Am. Compl., ECF No. 75.) As Plaintiff is the non-moving party, the Court will recount the events as he contends they occurred.

In summary, Plaintiff was a convicted inmate housed at the Tulare County Jail while awaiting transfer to a CDCR facility, and a mental health patient with an extensive history of mental illness and related issues. (Id. at ¶¶ 6-7.) Plaintiff was undergoing various treatments, including taking psychotropic medications. (Id.) Plaintiff had been designated as a high-risk inmate with single-cell status and had a steel door on his cell. (Id.)

The incidents at issue began on the evening of August 27, 2014. During the night medication pill pass, Defendant Smith opened Plaintiff's cell door food port to allow the nurse to hand Plaintiff his medication. (Pl.'s Decl. ¶ 8.) Plaintiff stuck his arm out of the food port in a non-threatening manner, dangling it downward at the elbow, and refused to pull it out. (Id.) Defendant Smith allegedly grabbed and twisted Plaintiff's arm and hands, twisting and turning his limb in different directions. (Id. at ¶¶ 9-11.) Defendant Smith eventually let go and radioed his sergeant and co-workers. (Id. at ¶ 12.) Defendant Thompson warned Plaintiff to take his arm out of the food port or be tasered. (Id. at ¶ 13.) At the suggestion of another deputy, Plaintiff was instead handcuffed and taken to a holding cell. (Id.)

Plaintiff was left in the holding cell for about nine hours, until August 28, 2014. (Pl.'s Decl. ¶ 15.) Plaintiff was then taken back to his cell; according to his deposition testimony, this was sometime between 6:00 and 7:00 in the morning of August 28, 2014, at least some minutes before the shift change at 7:00 a.m. (Id. at ¶ 16; Pl.'s Dep. 14:3-11, 14:17-20, 15:11-18.) Once Plaintiff's handcuffs were taken off, he again refused to move his arm out of the cell door's food port. (Pl.'s Dep. ¶ 16.) A discussion ensued, and then Deputy O'Neil began violently twisting and turning Plaintiff's arm and wrist, as Defendant Smith had done the night before. (Id. at ¶ 19.) Defendants Alvarez and Smith watched. (Id.) After another verbal exchange, Deputy O'Neil released Plaintiff's arm. (Id. at ¶¶ 20-21.)

Defendants Alvarez and Smith then discussed tasering Plaintiff, and Deputy O'Neil radioed for all deputies to the fourth floor. (Pl.'s Decl. ¶ 22.) Deputy O'Neil again grabbed Plaintiff's arm and hand and began twisting, turning, and pulling. (Id.) While this happened, Defendant Smith unlocked and swung open Plaintiff's cell door, and violently pulled at Plaintiff's upper body. (Id. at ¶ 26.) Both of Plaintiff's arms and hands were through the food port, holding him in place. (Id.) Plaintiff pleaded, "Why are you doing this?" and was calm, non-combative, and non-aggressive. (Id.)

Next, Defendant Smith grabbed Plaintiff's legs, lifted them, and pounded down on Plaintiff's shoulders. (Pl.'s Dec. ¶ 27.) The responding deputies arrived—Defendants Akin, Sandoval and Thompson—and the door opened wider as Defendants Sandoval and Akin grabbed Plaintiff's legs and yanked at his body. (Id. at ¶ 28.) Plaintiff braced himself, and his legs were thrown inside the cell, out of the doorway. (Id. at ¶ 29.) Plaintiff was still on the ground, and Plaintiff was kicked while he curled up and moaned. (Id. at ¶ 30.) Defendant Sandoval held Plaintiff's head to the ground and delivered closed fist blows to Plaintiff's thighs and arms, Defendant Smith kicked Plaintiff, and Plaintiff felt kicks from others, including Defendant Akin. (Id.) The assault ceased briefly, and then Defendant Sandoval "pounced" on Plaintiff and continued hitting him. (Id. at ¶¶ 32-35.) Eventually Defendant Sandoval rose from Plaintiff, left, and the cell door shut. (Id. at ¶ 36.) Plaintiff asked to see a nurse but was left on the ground. (Id. at ¶ 37.)

Approximately fifteen minutes later, the next shift floor deputy, Deputy Abbot, walked past Plaintiff's door, and Plaintiff informed Deputy Abbot that he needed to see medical staff, and talk to a sergeant or lieutenant about being beaten. (Pl.'s Decl. ¶ 42.) Deputy Abbot did not call for a nurse, and the interactions between Deputy Abbot and Plaintiff are described above. (Id. at ¶¶ 42-45.) Later in the day, Defendant Williams entered Plaintiff's holding cell and took photographs of Plaintiff's body, at the instruction of Defendant Stelow. (Pl.'s Decl. ¶ 47.)

Defendants dispute Plaintiff's version of events and argue that they are entitled to summary judgment because Plaintiff has not raised enough evidence to show a constitutional violation. First, Defendants argue that Plaintiff's admitted disobedience of multiple orders to remove his arm from the food port justified the use of force to gain compliance. Further, they argue that the amount of force used was directly related to the need to gain compliance over Plaintiff. Defendants also cite to the lack of details in Plaintiff's deposition testimony to argue that he cannot show the force used was excessive. For example, although Plaintiff discusses that Defendant Akin yanked, grabbed, and kicked him in his second amended complaint and declaration, he does not directly mention Defendant Akin in his deposition. Also, in his deposition, Plaintiff was sometimes vague or unclear about who did what, such as stating that he thought Defendant Alvarez went to the end of the tier at some point, or that he was not sure at times who was in his cell. (Pl.'s Dep. 17:25-18:5; 20:12-25; 50:2-9.) Defendants also assert that although Plaintiff did not pose a significant threat to them during the incidents, his noncompliance did pose general safety concerns.

Although the undisputed evidence that Plaintiff was not complying with orders may support the need for the application of force, Plaintiff's account is that the use of force escalated beyond what was necessary to gain his compliance. Further, to the extent Plaintiff has inconsistencies or lacks details in his deposition testimony as compared to his allegations, those matters go to Plaintiff's credibility. Defendants have not shown that Plaintiff's deposition testimony so clearly contradicts his declaration that his declaration must be disregarded. See Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012) (inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking

the affidavit); Van Asdale v. International Game Tech., 577 F.3d 989, 998-99 (9th Cir. 2009) (same). These disputed issues of material fact cannot be resolved on summary judgment.

Next, Defendants argue that Plaintiff cannot show that he had any significant injuries from the use of force. In support, Defendant's cite a mental health medical record from August 28, 2014 stating that Plaintiff reported blood on his hands and face, but there was no evidence of such, and that Plaintiff was agitated, with pressured speech, and suffering auditory hallucinations. (Aug. 28, 2014 Mental Health Progress Note, ECF No. 85-16.) The record further states that "[m]edical saw only a small 'dash' on [Plaintiff's] right arm" and that Plaintiff was "[m]edically cleared." (Id.) Defendants also cite to the photographs taken by Defendant Williams, which show no blood, and only what appear to be minor scrapes, bruises, scratches, and small gashes on various parts of Plaintiff's body and face, and some swelling on his head. (Aug. 28, 2014 photos, ECF No. 85-13.) Defendants further note that Plaintiff testified at his deposition that the injuries he incurred were "[m]y legs and my arm, my hand, were scraped. My head was lumped. My lip was busted." (Pl.'s Dep. 36:11-12.) Based on these submissions, Defendants argue that Plaintiff has only presented evidence of minor scrapes and bruises that are not indicative of an excessive use of force.

The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency. Hudson, 503 U.S. at 8 (quotation marks and citation omitted). Although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Wilkins v. Gaddy, 559 U.S. 34, 37–8 (2010) (citing Hudson, 503 U.S. at 9–10) (quotation marks omitted)); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002). "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." Wilkins, 509 U.S. at 38.

Here, Plaintiff argues that although he did not suffer major injuries such as broken bones, the forced used on him was malicious. Plaintiff was allegedly dropped on the floor, and kicked and hit while curled up on the ground, while he was not posing any significant threat. He asserts that hours passed before photographs were taken of his injuries during which he had a cell with a

13

sink and "didn't just lay there," inferring that he cleaned himself so that the "blood wasn't flowing" by the time the photos were taken. (Pl.'s Dep. 36:16-17; 37:21-38:3.) Further, Plaintiff asserts that the "swelling start[ed] to go down" when the photos were taken, because they were taken hours after the incident. (Pl.'s Dep. 36:16-17; 37:21-38:3.)

Thus, although Plaintiff does not materially dispute that he did not suffer serious physical injuries, there are some disputed material facts here regarding the nature of the force used under the circumstances. Although the extent of Plaintiff's injuries must be considered when assessing Plaintiff's excessive force claim, his injuries must be considered together with the need for the use of force during the events at issue. As discussed above, the current record does not resolve these material factual disputes.

Therefore, the Court cannot find here that only de minimus force was used, and Defendants' motion for summary judgment on Plaintiff's claims for excessive force and the failure to intervene in violation of the Eighth Amendment shall be denied. The Court next turns to Defendants' arguments regarding Plaintiff's claim for deliberate indifference in violation of the Eighth Amendment.

### D. Deliberate Indifference to Serious Medical Need

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in 'significant injury or the unnecessary and wanton infliction of pain.'" Peralta v. Dillard, 744 F.3d 1076, 1081-82 (2014) (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). To maintain a deliberate indifference claim, a prisoner must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting Jett, 439 F.3d at 1096 (quotation marks omitted)). "Indications that a plaintiff has a serious medical need include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an

14

individual's daily activities; or the existence of chronic or substantial pain." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation and internal quotation marks omitted); Wilhelm, 680 F.3d at 1122; Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000).

Defendants argue that the undisputed facts show that Plaintiff had no serious medical need in this case to which they failed to respond. As noted above, Plaintiff's medical records submitted here, the photographs of his injuries, and his own testimony indicate that Plaintiff did not have any serious injuries from the events at issue. Plaintiff disclaimed any major or significant injuries in his declaration, although he does assert some minor scrapes and bruises, a lump on his head, and a busted lip. Considering the undisputed facts regarding Plaintiff's injuries in the light most favorable to Plaintiff, his injuries do not rise to the level of an objectively significant medical need that required treatment to avoid serious further injury. Thus, the Court agrees that Defendants have met their burden to show an absence of any evidence that Plaintiff had a serious medical need to which they failed to respond. Plaintiff has shown no material dispute of fact here. Summary judgement therefore will be granted in Defendants' favor on this claim.

## IV.

## CONCLUSION

Based on the foregoing, it is HEREBY ORDERED that Defendants' motion for summary judgment is granted in part and denied in part, as follows:

1. Defendants' motion for summary judgment on Plaintiff's claims for excessive force and the failure to intervene in violation of the Eighth Amendment, is denied;

2. Defendants' motion for summary judgment on Plaintiff's Eighth Amendment deliberate indifference claim, is granted;

3. This matter shall proceed only on Plaintiff's Eighth Amendment claims for excessive force against Defendants Smith, Sandoval and Akin, and the failure to intervene against Defendant Alvarez.

4. Judgment shall be entered in favor of Defendants Thompson, Stelow, and Williams;

5. Defendants' motion for summary judgment for the failure to exhaust available administrative remedies is denied, without prejudice. As explained above, dispute issues of fact preclude the Court from concluding that administrative remedies were available to Plaintiff. In such circumstances, Defendants are entitled to an evidentiary hearing to resolve disputed factual issues. See Albino, 747 F.3d at 1170;

6. Here, Defendants have not requested an evidentiary hearing. If Defendants wish to pursue this defense, they may request an evidentiary hearing by filing a motion for a hearing within **thirty (30) days**. Defense counsel shall confer with Plaintiff, prior to requesting any such hearing, on the witnesses to be called and the evidence to be presented at the hearing. The motion shall include a statement that the meet and confer took place, including the date(s) and the method(s), and shall include a statement setting forth the anticipated witness(es) to be called and any document(s) or other evidence to be presented at the hearing. If the motion is granted, an order setting the hearing date and setting deadlines and procedures for the hearing will be issued; and

7. If no motion for an evidentiary hearing is filed within the **thirty (30) day** deadline, the Court will proceed to set this matter for trial on the claims described above.

IT IS SO ORDERED.

Dated: **August 14, 2018**

_____
UNITED STATES MAGISTRATE JUDGE