# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMIAH D. VICKERS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SMITH, et al.,<br><br>　　　　Defendants. | Case No. 1:15-cv-00129-SAB (PC)<br><br>ORDER AFTER EVIDENTIARY HEARING DISMISSING ACTION FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES |

Jeremiah D. Vickers ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Currently before the Court is Hector B. Sandoval Jr., Josh Akin, Anthony Alvarez, and Ryan Smith's (collectively "Defendants") request for an evidentiary hearing in support of their motion for summary judgment.

**I.**

**PROCEDURAL HISTORY**

Plaintiff filed this action on January 26, 2015. (ECF No. 1.) On February 4, 2015, Plaintiff consented to the jurisdiction of the United States magistrate judge. (ECF No. 8.) On July 1, 2015, the magistrate assigned to the action screened the complaint and it was dismissed with leave to amend for failure to state a cognizable claim. (ECF No. 14.) After receiving an extension of time, Plaintiff filed a first amended complaint on August 31, 2015. (ECF Nos.17,

18.)

On January 26, 2016, Plaintiff's first amended complaint was screened and found to state a cognizable Eighth Amendment excessive force claim against Defendants Smith, Sandoval and O'Neil; and an Eighth Amendment deliberate indifference to a serious medical need against Defendants Smith, Sandoval, O'Neil and Thompson and all remaining claims were dismissed. (ECF No. 20.) On February 24, 2016, Plaintiff filed an objection to the dismissal of his due process claim in the January 26, 2016 screening order which was construed as a motion for reconsideration. (ECF No. 24.) On March 11, 2016, Plaintiff's motion for reconsideration was denied. (ECF No. 25.)

On June 9, 2016, Defendants Smith and Thompson filed an answer to the complaint and a discovery and scheduling order was filed on June 10, 2016. (ECF Nos. 35, 36.) On June 21, 2016, Defendants Smith and Thompson consented to the jurisdiction of the magistrate judge. (ECF No. 41.) On September 8, 2016, this action was reassigned to the undersigned upon the retirement of Magistrate Judge Dennis Beck. (ECF No. 47.) On November 30, 2016, Plaintiff filed a motion for leave to file a second amended complaint and second amended complaint was lodged. (ECF Nos. 56, 58.)

On January 9, 2017, Plaintiff filed a motion to compel and a motion for an extension of time to file a motion to compel. (ECF Nos. 60, 61.) Defendants Smith and Thompson filed an opposition to the motion for an extension of time on January 10, 2017. (ECF No. 62.) On May 11, 2017, Defendant Sandoval filed an answer to the complaint. (ECF No. 64.) On May 15, 2017, Defendant Sandoval consented to the jurisdiction of the magistrate judge. (ECF No. 65.) On July 5, 2017, Plaintiff filed a motion requesting modification of the scheduling order. (ECF No. 71.)

On July 11, 2017, an order issued dismissing Defendant O'Neill from this action for failure to serve in compliance with Rule 4 of the Federal Rules of Civil Procedure. (ECF No. 72.) On July 18, 2017, an order was filed denying Plaintiff's motion for an extension of time to file a motion to compel as unnecessary and directing Defendants to file a response to Plaintiff's motion to compel. (ECF No. 73.)

1 |       On July 26, 2017, Plaintiff's motion for leave to file a second amended complaint was granted and the second amended complaint was filed and screened. (ECF No. 75, 76.) The Court found that Plaintiff had stated additional claims for excessive force against Deputy Akin, for the failure to intervene against Deputy Alvarez, and for deliberate indifference to a serious medical need against Deputy Akin, Deputy Alvarez, Lieutenant Stelow and Sergeant Williams in violation of the Eighth Amendment. (ECF No. 76.)

      On August 31, 2017, Plaintiff's motion to compel was granted in part and denied in part and Defendants Smith and Thompson were ordered to serve supplemental responses within thirty days. (ECF No. 80.)

      On October 3, 2017, Defendants Akin, Alvarez, Sandoval, Smith, Stelow, Thompson, and Williams filed a motion for summary judgment for failure to exhaust administrative remedies and on the merits of Plaintiff's claims. (ECF No. 85.) On October 24, 2017, Defendants Akin, Alvarez, Stelow, and Williams consented to the jurisdiction of the magistrate judge. (ECF No. 89.)

      On November 20, 2017, Plaintiff filed a motion for a stay Defendants' motion for summary judgment and motion requesting modification of the discovery and scheduling order. (ECF Nos. 90, 91.) On November 28, 2017, Defendants filed an opposition to the motion to stay. (ECF No. 92.) On January 10, 2018, an order issued denying Plaintiff's request to stay the motion for summary judgment and for modification of the scheduling order and Plaintiff was ordered to file an opposition to the motion for summary judgment within thirty days. (ECF No. 93.) After receiving an extension of time, Plaintiff filed an opposition to the motion for summary judgment on March 2, 2018. (ECF No. 95.) Defendants filed a reply on March 8, 2018. (ECF No. 97.) On August 14, 2018, an order issued granting in part and denying in part Defendants' motion for summary judgment. (ECF No. 98.) The Court found that an evidentiary hearing would be required to resolve the exhaustion issues and permitted Defendants to file a request for an evidentiary hearing. (Id.) The Court granted summary judgment on Plaintiff's Eighth Amendment against Defendants Thompson, Stelow, and Williams and judgment was entered in their favor. (Id.)

On September 5, 2018, Defendants Akin, Alvarez, Sandoval, and Smith filed a request for an evidentiary hearing. (ECF No. 99.) A hearing was set for September 27, 2018. (ECF No. 100.) On September 19, 2018, Plaintiff filed a motion for appointment of counsel and postponement of the evidentiary hearing which was denied on September 21, 2018. (ECF No. 105.) On September 26, 2018, Plaintiff filed a notice of refusal to appear at the September 27, 2018 hearing. (ECF No. 108.)

An evidentiary hearing was held before the undersigned on September 27, 2018. (ECF No. 109.) Plaintiff appeared pro se by video conference and counsel Amy Myers was present for Defendants. (Id.) Witnesses Denise Damari and Timothy Abbott testified for the defense and Plaintiff testified on his own behalf. (Id.) Defendants Exhibits A, B, C, D, and E were admitted into evidence. (Id.) The matter was taken under submission. (Id.)

On October 23, 2018, Defendants filed a motion for leave to file an amended answer. (ECF No. 114.) Plaintiff filed an opposition to the motion on November 13, 2018, and Defendants filed a reply on November 19, 2018. (ECF Nos. 117, 118.) On November 28, 2018, an order issued granting Defendants motion to file an amended answer and an amended answer was filed on December 3, 2018. (ECF No. 120.) On December 5, 2018, an order issued reopening discovery in this matter for a limited purpose of Plaintiff conducting discovery as to "(1) whether Deputy Timothy Abbot gave Plaintiff a grievance form on or about August 28, 2014; (2) whether Plaintiff submitted that form to Deputy Abbot; and (3) whether that form was lost, destroyed or otherwise not acted upon." (Id.) Supplemental briefing on Defendants' motion to dismiss was to be filed within ninety days of December 5, 2018. (Id.) No supplemental briefing was filed.

## II.

## ALLEGATIONS IN SECOND AMENDED COMPLAINT

At the time of the events at issue in this action, Plaintiff, an African American, was a convicted inmate housed at the Tulare County Jail while awaiting transfer to a California Department of Corrections and Rehabilitations facility. Plaintiff was housed in a single status cell in administrative segregation. (Sec. Am. Compl. 3, 12, ECF No. 75.) He is a documented

mental health patient and was receiving several varieties and doses of psychotropic medication during the day. (Id. at 3-4.)

On August 27, 2014, at night medication pill pass, Defendant Smith opened the food port on Plaintiff's cell door to allow the nurse to hand him medication. Plaintiff stuck his arm out of the food port in a "non-threatening manner," dangling at the elbow downward, and "refused to put it back in, hindering the deputy's ability to close it." (Id. at 4, 8.) Defendant Smith told Plaintiff to take his arm out, and Plaintiff refused. Defendant Smith audibly exhaled and then grabbed Plaintiff's arm and hand with both of his hands and began "twisting, turning and pulling them violently in different directions in an attempt to dislocate and/or break them/it." (Id. at 8.) Plaintiff was able to non-aggressively turn with Defendant Smith to prevent a break or dislocation. The event lasted for fourteen seconds. After about seven seconds, Plaintiff asked why he was trying to break his arm. Defendant Smith released Plaintiff's arm and shoved it back into the door saying, "motherfucker!" (Id. at 8.)

Defendant Smith then told the nurse to leave and radioed his sergeant and co-workers. When the other deputies arrived, Defendant Smith, with a smirk, said, "He won't stick his arm in. I tried to break that motherfucker." (Id. at 8.) Sergeant Thompson arrived and instructed Plaintiff to take his arm out of the food port, or else he'd be tasered. Plaintiff contends that he was never a physical threat because he was in his cell the entire time, and he never acted aggressively. (Id.)

Plaintiff was placed in a holding cell for about nine hours. (Id. at 4.) Twice during this time, Deputy O'Neil came and stood over Plaintiff, sneering down at him with an intimidating look, but saying nothing. Plaintiff believes that he intended to intimidate Plaintiff. (Id.)

At 6:40 a.m., Plaintiff asked a passing deputy what time it was. Ten minutes later, Defendants Smith and Alvarez, and Deputy O'Neil, placed Plaintiff back into his cell. (Id. at 4.) Once the handcuffs were taken off, Plaintiff again refused to remove his arm out of the cell door's food port. (Id.) Defendant Smith and Deputy O'Neil became hostile, saying "Pull your fucking arm in, dude," or "what the fuck is up with you?" (Id. at 5.) Defendant Alvarez suggested "just tase him now?" (Id.) Deputy O'Neil then grabbed Plaintiff's arm and wrist and

violently twisting and turning them, just as Defendant Smith had the night before. Defendants Alvarez and Smith just watched. (Id.)

Plaintiff turned with the assault and remained calm, and asked Deputy O'Neil, "What's wrong with you...why are you trying to break my arm? This is out of line." (Id. at 12.) Plaintiff's pleas only ignited Deputy O'Neil and he said several racial slurs, such as "You don't want to pull in your arm, you fucking monkey." After ten or twelve seconds, Deputy O'Neil released Plaintiff's arm and added more curses and racial slurs. (Id.)

Defendant Alvarez again suggested they should tase Plaintiff. (Id. at 12-13.) Deputy O'Neil radioed and called all deputies to the fourth floor. Deputy O'Neil then grabbed Plaintiff's arm and began twisting it again. Defendant Smith said he was going to open the door and Deputy O'Neil nodded his head. (Id. at 13.) Defendant Smith unlocked the door and began violently pulling at Plaintiff's shoulders and shirt and shoving Plaintiff in the neck, torso and mid-section. Both of Plaintiff's arms were in the food port, holding him in place. Plaintiff, remaining calm, asked Defendant Smith in a low voice why he was doing this. (Id. at 14.) Defendant Smith then lifted Plaintiff's feet 4.5 feet off the floor and pushed down on his shoulders. (Id. at 14-15.) Plaintiff remained silent and kept his body still. Defendant Smith dropped one of his legs. (Id. at 15.)

When Sergeant Thompson and Defendants Akin, and Sandoval approached, the attack intensified. One deputy possibly Defendant Sandoval, grabbed Plaintiff's other leg off the ground and another, possibly Defendant Akin, began to yank Plaintiff's torso and mid-section, all while his arm and hand were being twisted and scraped on the other side of the door. (Id.) Plaintiff placed one arm on the ground to avoid getting a head injury. His other arm was released and pushed through the food port. Plaintiff's legs were thrown inside the cell, out of the doorway. While Plaintiff was completely still on the ground, some deputies gave him boot-kicks to the legs, side and back. (Id.) Plaintiff attempted to curl-up and Defendant Sandoval pressed Plaintiff's head to the ground with one hand as his knee was on Plaintiff's upper rib section. (Id. at 15-16.) He then delivered three or four closed-fist blows to Plaintiff's thigh and his arm, which was covering his face. Defendant Smith was kicking Plaintiff in the shin and knee.

Defendant Akin was kicking Plaintiff in the backside of his legs and his side. (Id. at 16.)

At some point, someone said, "all right," and Defendant Sandoval rose up and backed out of the cell. Plaintiff asked if they were just going to leave him on the floor, and then asked to see the nurse. Defendant Sandoval attempted to rush back in while Plaintiff was still on the ground. Instead, he rushed into the corner of the bed frame, and Plaintiff put up his arm to brace himself in case Sandoval fell. Plaintiff said, "Please be careful, don't hurt yourself trying to hurt me." (Id. at 16.) However, Defendant Sandoval looked down at Plaintiff and then punched him in the face, busting open his lip and hitting his head off the floor. Defendant Sandoval got up and kicked Plaintiff once or twice before he left. Plaintiff asked if he would receive medical attention, but he did not receive any. (Id.)

Approximately fifteen minutes later, Deputy Abbott began his shift and walked the tier. (Id. at 17-18.) Plaintiff asked for medical attention, and asked that he be able to see the shift sergeant or lieutenant. Deputy Abbott asked Plaintiff what happened, and Plaintiff showed him his lip and told him that he had been beaten by the previous shift deputies. Deputy Abbott told Plaintiff that the nurse would be on the tier later, but he never informed the nurse of Plaintiff's situation. (Id. at 18.)

When the pill pass nurse arrived about two and one-half hours later, Plaintiff informed her of his condition. Plaintiff alleges that she was unaware and indifferent to the injuries he showed her. She instructed Plaintiff to fill out a sick-call request slip, which he did and turned in immediately. However, Plaintiff was never called on by medical staff. (Id. at 19.) Plaintiff received a grievance form from Deputy Abbot at some time and immediately filed it out and returned it to Deputy Abbot. (Id.)

Sergeant Williams took photographs of Plaintiff's body at the direction of Lieutenant Stelow. (Id. at 20.) Lieutenant Stelow and Sergeant Williams did not ensure that Plaintiff had a medical review although they knew that Plaintiff had been involved in the incident.[1] (Id.)

///

---

[1] Summary judgment was granted in favor of Defendants Thompson, Stelow and Williams on August 14, 2018. (ECF No. 98.)

# III.

## LEGAL STANDARD FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, 136 S. Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.' "). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendant bears the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

Defendant must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing Albino, 747 F.3d at 1172) (quotation marks omitted). The burden then shifts to Plaintiff to show that something in his particular case made the existing and generally available administrative remedies effectively unavailable to him. Williams, 775 F.3d at 1191

1 (citing Albino, 747 F.3d at 1172) (quotation marks omitted). The ultimate burden of proof on the issue of exhaustion remains with Defendant. Williams, 775 F.3d at 1191 (quotation marks omitted).

Where "summary judgment is not appropriate," as to the issue of exhaustion "the district judge may decide disputed questions of fact in a preliminary proceeding." Albino, 747 F.3d at 1168. Whenever feasible, such questions of fact should be "decided before reaching the merits of a prisoner's claim." Id. at 1170. "If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits." Id. at 1171.

Furthermore, one of the purposes of an evidentiary hearing is to enable the finder of fact to evaluate the credibility of witnesses by seeing "the witness's physical reactions to questions, to assess the witness's demeanor, and to hear the tone of the witness's voice. . . ." United States v. Mejia, 69 F.3d 309, 315 (9th Cir. 1995). It is only in rare instances that "credibility may be determined without an evidentiary hearing" on the documentary testimony and evidence in the record. Earp v. Ornoski, 431 F.3d 1158, 1169–70 (9th Cir. 2005).

### IV.

### ANALYSIS AND FINDINGS ON EXHAUSTION OF ADMINISTRATIVE REMEDIES

Following the order on summary judgment, this action is proceeding on Eighth Amendment claims of excessive force against Defendants Smith, Sandoval and Akin, and for failure to intervene against Defendant Alvarez. In the order denying the motion for summary judgment on the grounds of failure to exhaust, the Court found that Plaintiff presented evidence that he attempted to exhaust his administrative remedies by giving a grievance to Deputy Abbott on August 28, 2014. (ECF No. 98 at 8.) Defendants presented evidence that Plaintiff had previously filed grievances and Tulare County had responded to such grievance and argued that there was no evidence that Plaintiff had attempted to file a grievance to exhaust the claim at issue here. (Id. at 8-9.) The Court found that the issue could not be decided on summary judgment

because an evidentiary hearing would be required to resolve the disputed facts at issue. (Id. at 9.)

An evidentiary hearing was held on September 27, 2018, during which the Court heard the testimony of Denise Damari, Timothy Abbot, and Plaintiff. (ECF No. 109.) Plaintiff appeared by video conference at the hearing as he had refused to transfer so that he could be brought to the hearing. The following exhibits were admitted into evidence: Tulare County Sheriff's Department Detention Division Procedure (hereafter "Detention Division Procedure") (Exhibit A); Inmate Grievance forms for J. Vickers (Exhibit B); Tulare County Sheriff's Department Crime Report dated 8/28/14 (Exhibit C); and Photographs related to 8/24/14 incident (Exhibit D).

### A. Factual Findings

Based on the evidence presented at the evidentiary hearing, the Court makes the following factual findings.

Tulare County has a grievance process in place which defines a grievance as a complaint by an inmate involving conditions of confinement. (Detention Division Procedure at ¶ I.A.) At the first step of the grievance process, the inmate is to speak with the housing officer to see if the grievance can be resolved informally. (Id. at ¶ III.A.; Testimony of Denise Damari (hereafter "Damari Testimony"); Testimony of Timothy Abbot (hereafter "Abbot Testimony").) If the grievance is unable to be resolved informally, the inmate may request a grievance form from custody staff. (Detention Division Procedure at ¶ III.B; Damari Testimony.) If custody staff refuses to provide a grievance form, the inmate may complain in writing to the facility manager within two days. (Detention Division Procedure at ¶ II.B) The inmate is to complete and return the grievance form to the shift sergeant within five days of the specific complaint. (Detention Division Procedure at ¶ III.B.; Damari Testimony.)

Upon receipt of the grievance, an investigation is to be initiated and the inmate is to be notified of the results of the investigation in writing within seven days. (Detention Division Procedure at ¶ 1; Damari Testimony.) If the inmate is not satisfied with the response, he may appeal to the facility manager within three days of the adverse decision. (Detention Division Procedure at ¶ III.D.) The facility manager shall return his decision in writing to the inmate

within ten days of the date the appeal was filed.  (Detention Division Procedure at ¶ III.E.)

If the inmate is dissatisfied with the facility manager's response to the appeal, the inmate may seek judicial review of the condition grieved by bringing a legal action.  (Detention Division Procedure at ¶ III.F.)

When a grievance is filed, it is logged on the housing log and provided with a number.  (Damari Testimony; Inmate Grievance Tracking Log.)

Inmates are informed of the grievance procedure in the inmate handbook and additionally, information regarding the grievance procedure is posted in the housing unit.  (Damari Testimony.)

There is no grievance logged for Plaintiff on August 28, 2014.  (Damari Testimony; Inmate Grievance Tracking Log, Exhibit E.)

Prior to the incident at issue in this action, Plaintiff had filed seven grievances on August 4, 2013; August 25, 2013; August 30, 2013; September 4, 2013; January 18, 2014; April 2, 2014; and July 15, 2014.  (Damari Testimony; Inmate Grievances, Exhibit B.)

Deputy Abbot came on duty at 7:00 a.m. on August 28, 2014.  (Abbot Testimony.)  About 1:00 p.m. that day, Deputy Abbot heard loud banging and upon investigation, discovered that there was glass underneath Plaintiff's door.  (Id.)  Plaintiff was removed from his cell and it was discovered that he had broken the light fixtures and telephone in his cell and the telephone receiver had been placed in the toilet.  (Id.)

### B. Plaintiff Failed to Exhaust Administrative Remedies

Plaintiff does not dispute that an administrative grievance process was available or that he was familiar with the process.  Plaintiff contends that administrative remedies were unavailable because he gave Deputy Abbot a grievance form on August 28, 2014, and Deputy Abbot did not process the form.

Failure to exhaust may be excused where the administrative remedies have been rendered "unavailable," and in such a case, the plaintiff bears the burden of demonstrating that the grievance process was unavailable to him through no fault of his own.  Sapp v. Kimbrell, 623 F.3d 813, 822-23 (9th Cir. 2010); see also Ward v. Chavez, 678 F.3d 1042, 1044-45 (9th Cir.

2012) (exhaustion excused where futile); Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Brown, 422 F.3d at 939-40 (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available). Aside from this single exception, "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'… [a]nd that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross, 136 S. Ct. at 1856.

The test for deciding whether a grievance procedure was unavailable uses an objective standard. Albino, 697 F.3d at 1035. "[A]ffirmative actions by jail staff preventing proper exhaustion, even if done innocently, make administrative remedies effectively unavailable." Id. at 1034. An inmate may demonstrate the unavailability of remedies by showing "(1) that jail staff affirmatively interfered with his ability to exhaust administrative remedies or (2) that the remedies were unknowable." Id. at 1033. The inmate must make "a good-faith effort" to determine and comply with a prison's grievance procedures. Id. at 1035.

Plaintiff did not submit any physical evidence that he timely grieved the incidents alleged in this action, but testified that he complied with the grievance procedures by giving Deputy Abbot a completed grievance form regarding the incidents that had occurred the previous shift. Although Plaintiff testified that he was familiar with the grievance process and had received his copy of the grievance form in the past, he did not receive his copy of the form from Deputy Abbot nor did he question why it was not provided to him at the time.

Deputy Abbot testified that he remembered Plaintiff due to the incident that had taken place that day. Deputy Abbot responded to loud banging coming from Plaintiff's cell and Plaintiff told him that he was going crazy in his cell, was hearing voices, and it was discovered that Plaintiff had vandalized his cell. Deputy Abbot stated that he has no recollection of Plaintiff giving him a grievance form on that date. Defendant Abbot testified that had he been given a grievance form by Plaintiff, he would have completed his portion of the form and given it to the shift sergeant, at which point it would have been logged on the inmate grievance tracking log and Plaintiff would have been provided with his pink copy of the form.

1    On examination by Defendants, Plaintiff testified that he was seen by mental health that
2 morning at around 7:30, but denied the portion of the mental health note that stated he was seen
3 by medical and medically cleared. However, Plaintiff admitted that he remembered that he was
4 seen by mental health that day at 7:30 because he was looking at the mental health note.

5    Plaintiff admitted that he had no recollection of breaking the lights and phone in his cell
6 or of telling Deputy Abbot that he was going crazy or hearing voices on August 28, 2014,
7 although he does remember that the phone was in the sink. His only recollection of the incident
8 was that he was taken to intake. When asked about a medical form that was completed and
9 turned in that day, Plaintiff stated that, if he remembers right, the sick call slip was given to him
10 by the nurse and he completed it right then and returned it to her. Although Plaintiff admitted
11 that he did not remember breaking items in his cell or seeing a mental health provider that
12 morning, he testified that he specifically remembered speaking with Deputy Abbot several times
13 that morning before he was removed from his cell and that at some time he gave Deputy Abbot
14 the grievance form.

15    Upon questioning as to when he provided Deputy Abbot with the grievance form,
16 Plaintiff stated that he told Deputy Abbot about the incident on his first tier check, and that he
17 asked for the grievance form after his 7:30 visit with mental health. Plaintiff testified that he
18 gave the form to Deputy Abbot on his next walk of the tier.

19    The Court finds that Plaintiff's testimony that he specifically remembers his interactions
20 with Deputy Abbot, including providing him with a completed grievance form early in the shift
21 to be not credible. It was clear from Plaintiff's testimony that he does not have recollection of
22 the major incidents that occurred on August 28, 2014, including seeing a mental health provider
23 that morning or breaking the lights and phone in his cell and placing the phone in the toilet in the
24 afternoon. Based on Plaintiff's testimony, it would appear that his first actual recollection of
25 August 28, 2014 was when he was in intake after he had vandalized his cell in the early
26 afternoon. Given the significant lapses in Plaintiff's memory regarding what occurred on August
27 28, 2014, the Court finds it incredible that he would retain only those specific memories
28 regarding his interactions with Deputy Abbot, especially since Plaintiff testified he provided

13

1  Deputy Abbot with a grievance form early in the shift and it is this time period of which Plaintiff
2  has limited if any recollection.

3  Further, the Court found the testimony of Deputy Abbot, that had he been provided with
4  a grievance form, he would have provided it to the sergeant so that it would be placed on the
5  grievance log to be credible.

6  The Supreme Court has held that the PLRA requires that all available remedies must be
7  exhausted before a complaint challenging conditions of confinement can be entertained
8  regardless of the relief offered through the administrative process. Booth, 532 U.S. at 739, 741;
9  Porter, 534 U.S. at 524. The exhaustion requirement applies to all prisoner suits about inmate
10 life. Porter, 534 U.S. at 532; Woodford v. Ngo, 548 U.S. 81, 85 (2006). The purposes of the
11 PLRA are to allow a prison to address complaints about the programs administered before being
12 subjected to suit, to reduce the litigation to the extent that complaints are satisfactorily resolved,
13 and to improve the litigation that does occur by leading to preparation of a useful record. Jones,
14 549 U.S. at 219; Ngo, 548 U.S. at 89. Exhaustion prior to commencement of the action is an
15 indispensable requirement. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).

16 Here, the Court finds that Plaintiff did not exhaust his administrative remedies by filing a
17 timely grievance. Where the court concludes that the prisoner has failed to exhaust administrative
18 remedies prior to filing suit, the proper remedy is dismissal without prejudice. Vaden v.
19 Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006); Lira v. Herrera, 427 F.3d 1164, 1171 (9th Cir.
20 2005); McKinney, 311 F.3d at 1200-01.

## V.

## CONCLUSION AND ORDER

23 The Court finds that Defendants have met their burden to demonstrate that there was an
24 available administrative remedy and that Plaintiff did not exhaust that available remedy. Williams,
25 775 F.3d at 1191. Plaintiff has not presented any credible evidence to demonstrate that he filed a
26 grievance and was prevented from exhausting his administrative remedies. Therefore, the Court
27 finds that Plaintiff did not exhaust his administrative remedies prior to initiating this action.
28 / / /

Based on the foregoing, IT IS HEREBY ORDERED that:

1. This action is DISMISSED WITHOUT PREJUDICE for Plaintiff's failure to exhaust administrative remedies; and

2. The Clerk of the Court is DIRECTED to close this action.

IT IS SO ORDERED.

Dated: __**March 26, 2019**__

_____
UNITED STATES MAGISTRATE JUDGE